Shirley GORCHALS and James Gorchals, Petitioners-
Respondents,

v.

WISCONSIN DEPARTMENT OF HEALTH AND FAMILY SERVI
CES, Respondent-Appellant.

Court of Appeals

*No. 98–0212. Submitted on briefs November 30,
1998.—Decided January 27, 1999.*

(Also reported in 591 N.W.2d 615.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Bruce A. Olsen,* assistant attorney general.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Mitchell Hagopian* of the Coalition of Wisconsin Aging Groups.

There was an amicus curiae brief filed by *Carol Wessels Plaisted* and *Kara Puklich Morgan* of Legal Action of Wisconsin, Inc.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. This case concerns the application of the hardship criteria in the hardship waiver provision of the medical assistance recovery program. The program enables the Wisconsin Department of Health and Family Services to recoup medical assistance payments from the estates of deceased medical assistance recipients. Under the waiver allowance, however, the department must forego its claim against the estate if the beneficiaries of the estate meet certain criteria. Because we conclude that the department proceeded in this case under an unreasonable interpretation of the administrative rule setting forth the waiver criteria, we affirm the circuit court's reversal of the department's decision.

The facts of this case are as follows. Shirley and James Gorchals (Shirley and James) are the surviving sister and nephew of John Hawkinson, who received medical assistance while in a nursing home. In June 1994, the Department of Health and Family Services (DHFS or the department) obtained a lien on Hawkinson's home pursuant to § 49.496(2), STATS. Hawkinson died in February 1996. Shirley and James were beneficiaries of Hawkinson's will. The principal asset of Hawkinson's estate is his home. Shirley and James have lived in Hawkinson's home since 1953 and 1964, respectively. Both Shirley and James are recipients of Supplemental Security Income (SSI), Medical Assistance and Food Stamps.

In June 1996, DHFS filed a claim against Hawkinson's estate. *See* § 49.496(3), STATS. In response, Shirley and James requested a hardship waiver of this claim, pursuant to § 49.496(6m) and WIS. ADM. CODE

§ HFS 108.02(12).[1] DHFS denied the request and informed Shirley and James that "state law requires that the Department take a lien on the home in the estate as . . . settlement of its claim."[2] *See* WIS. ADM. CODE § 108.02(11)(b)2.a ("The department shall take a lien in full or partial settlement of an estate claim against the portion of an estate that is a home if . . . [a] sibling of the recipient or client resides in the decedent's home and . . . resided in the home for at least 12 months before . . . the recipient was admitted to a nursing home."). On review, the examiner upheld the

---

[1] Section 49.496(6m), STATS., reads:

> WAIVER DUE TO HARDSHIP. The department shall promulgate rules establishing standards for determining whether the application of this section would work an undue hardship in individual cases. If the department determines that the application of this section would work an undue hardship in a particular case, the department *shall* waive application of this section in that case. [Emphasis added.]

The rule promulgated pursuant to this section is WIS. ADM. CODE § HFS 108.02(12). The portion relevant to this case reads:

> (b) *Hardship waiver criteria.* 1. A beneficiary or heir of a decedent . . . may apply to the department for a waiver of an estate claim filed by the department. The department . . . shall determine whether the applicant meets the criterion . . . . If the department determines that the criterion . . . is met, the department *shall* waive its claim as to that applicant.
> 2. Any of the following situations constitutes an undue hardship on the waiver applicant:
> a. The waiver applicant would become or remain eligible for supplemental security income (SSI), food stamps . . . or medical assistance if the department pursued its claim . . . .

[2] The parties do not address the relationship between the 1994 lien and the lien referred to in this 1996 letter. Because all the issues in the case revolve around the 1996 claim and lien, we need not delve into this question. We note, however, that the record does not contain a copy of any lien.

denial.[3] Shirley and James then requested a rehearing, which was denied. They then appealed to the circuit court, which found that DHFS had misapplied the law in denying the waiver and reversed the department's decision. DHFS appeals.

We first address the standard of review. The interpretation of an administrative rule, like the interpretation of a statute, is a question of law we review de novo. *See State ex rel. Grant v. Department of*

---

[3] The examiner, while upholding denial of the waiver, did find that the procedure followed by DHFS was incorrect.

> The process is as follows: a recipient, whose property either has or does not have a lien, dies. The Bureau then files a claim in the estate. The beneficiary requests a waiver. Only after it is determined whether the estate claim is waived does the provision of sec. [HFS] 108.02(11)(b) [section requiring lien in settlement of claim if sibling resides in home] become effective. . . .

> Such a lien is only allowed in settlement of a claim, however; it is not allowed in alternative to a claim.

In this case, the denial of the waiver and the decision that the "claim in this estate will result in a lien" appear to have been simultaneous. DHFS responded by letter to Shirley and James' request that the claim be waived. In those letters, DHFS informed the Gorchalses that it was required by law to take a lien on the home "as full or partial settlement of an estate claim" because a sibling of the deceased, Shirley, lived in the home. *See* WIS. ADM. CODE § HFS 108.02(11)(b)2. In the same letter, DHFS denied the Gorchalses' request for a waiver, based on the fact that they would remain eligible for SSI and Medicaid whether or not DHFS enforced or waived its claim.

We need not decide whether DHFS followed the proper sequence of events. The gravamen of the case is the interpretation of the hardship waiver provision, and we base our decision on that question. We thus need not address the procedural question. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

*Corrections*, 192 Wis. 2d 298, 301, 531 N.W.2d 367, 368 (Ct. App. 1995). However, when an agency has experience, knowledge and expertise interpreting a statute and the rules promulgated under it, we give great weight to the agency's interpretation. *See Thompson v. Wisconsin Dep't of Pub. Instruction*, 197 Wis. 2d 688, 697, 541 N.W.2d 182, 185 (Ct. App. 1995). Furthermore, "[a]n administrative construction of the agency's own regulations is controlling . . . unless plainly erroneous or inconsistent with the regulations." *State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904, 908–09 (1998) (quoted source omitted).

Here, even if we were to give "great weight" deference to DHFS' interpretation, the interpretation would still not control because it is so plainly inconsistent with the unambiguous wording of DHFS' own regulation. The rule lists three situations, any one of which constitutes undue hardship on the waiver applicant. *See* WIS. ADM. CODE § HFS 108.02(12)(b)2. The first situation is that the "waiver applicant would become or remain eligible for . . . SSI, food stamps . . . or medical assistance if the department pursued its claim." WIS. ADM. CODE § HFS 108.02(12)(b)2.a. This is clear. The agency's task is to determine if the applicant will be eligible for assistance when the department enforces its claim. If the answer to that question is "yes," the department must grant a waiver. *See* WIS. ADM. CODE § HFS 108.02(12)(b) ("If the . . . criterion . . . is met, the department *shall* waive its claim . . . .") (emphasis added).

DHFS asserts that hardship exists under this criterion only when an inheritance would normally allow a beneficiary to get off SSI, food stamps or medical assistance, but the department's claim would instead cause the beneficiary to remain on such governmental

entitlement programs. Put another way, DHFS urges us to read "if" to mean "as a result of," thus instituting a "but for" test within the rule.

We decline DHFS' invitation to rewrite the rule in question. *See Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 446, 573 N.W.2d 522, 529 (1998) ("To judicially insert such [language] would impermissibly rewrite an already plain . . . rule."). If the agency intends the rule to include a "but for" test, it is free to rewrite the rule. But as it stands, the rule is clear. It mandates only a determination of eligibility, not causation.

▮

Under the plain meaning of the rule, Shirley and James should have been granted a waiver. The stipulated facts state that "[a]t all times relevant to this case, Shirley and James . . . have been and will remain recipients of . . . SSI, Medical Assistance and Food Stamps." Since they will remain eligible if the department pursues its claim, they satisfy the hardship criterion and should have been granted a waiver.

DHFS next argues that the hardship waiver provision does not apply in this case because it only applies to claims filed against estates, not to liens filed against beneficiaries' homes. *See* WIS. ADM. CODE § HFS 108.02(12)(b) ("A beneficiary or heir . . . may apply . . . for a waiver of an *estate claim* filed by the department.") (emphasis added). This makes sense, according to DHFS, because a homestead lien does not cause the applicant actual hardship. As DHFS states:

> The justification for the policy determination is clearly illustrated by the undisputed facts of this case: the Gorchalses can point to no hardship caused by the department's lien against Hawkinson's homestead. They may continue to live in the home for as long as they choose. They may sell the

home and purchase a successor dwelling with the proceeds. Only after both of them vacate the Hawkinson homestead or a successor dwelling will the department execute on its lien to recover the medical assistance paid on Hawkinson's behalf.

We reject this argument for two reasons. First, Shirley and James did apply "for a waiver of an estate claim filed by the department." WIS. ADM. CODE § HFS 108.02(12)(b). The department did file a claim. Shirley and James then submitted an "Application for Waiver of Estate Claim and Release of Lien." Thus, WIS. ADM. CODE § HFS 108.02(12) applied and the waiver should have been granted. DHFS cannot skirt the waiver provision by jumping over the hardship determination to the requirement that it take a lien to settle a claim when a sibling lives in the home. *See* WIS. ADM. CODE § HFS 108.02(11)(b)2. Second, DHFS' assertion that the lien will not be enforced until both Shirley and James vacate the house is a hollow promise. In this case, DHFS has assured them it will not enforce the lien any sooner. But what will hold DHFS to this promise? And by what criteria will DHFS choose to make the same promise in future cases? It is true that Shirley was protected from premature enforcement of a lien filed prior to Hawkinson's death. *See* § 49.496(2)(f)4, STATS. (prohibiting the department from enforcing a lien under that subsection as long as a sibling residing in the recipient's home who resided in the home for a year prior to the recipient's admission to the nursing home survives). However, there are no statutory guarantees protecting James' ability to remain in the home, as he is neither a child nor a sibling of the recipient. *See* § 49.496(2)(f); WIS. ADM. CODE § HFS 108.02(11)(b). The department's promise rings especially false in a case

such as this. Contrary to DHFS' assertion, the undisputed facts of this case illustrate the need for the added protection of the hardship waiver.

Finally, DHFS claims that we must accept its interpretation because not to do so would defeat the "overarching purpose of the medical assistance program—that those with adequate resources should be responsible for the costs of their own medical care, and medical assistance should be the payor of last resort." DHFS further contends that to give an "absolutist interpretation . . . would unreasonably require the department to waive its right to be reimbursed" even when the recipient of SSI and the like received a homestead through inheritance. In such a case, the recipient would continue to receive governmental entitlements, but the house would also pass free and clear to the recipient because the house is an exempt asset under the federal program. Impliedly, DHFS is arguing that a strict interpretation of the rule's language would be absurd.

But the problem with DHFS' logic is that it is not settled whether the "overarching purpose" of the federal medical assistance recovery program is nothing more than a cost-benefit analysis designed to minimize the amount of government expenditures. There is substantial authority for the alternative proposition that the purpose of medical assistance is to "attain or retain capability for independence" and to prevent the creation of a hardship. *See* § 49.45(1), Stats.; 42 U.S.C.A. § 1396p(b)(3) (West Supp. 1998). As stated by the amicus, SeniorLAW:

> In cases of poverty such as this, the fact that an asset would be considered exempt for purposes of a public benefit program should be a factor that *war-*

*rants* waiver, not weighs against it. This is because those individuals in poverty who do not even have the minimal amount of assets that the government allows them to keep and still qualify for public assistance, are the neediest individuals of all. They are the individuals who are truly suffering hardship.

It is not the purpose of this opinion to determine whether DHFS is right or wrong in its view of medical assistance reimbursement. But it is our purpose to determine whether our formalistic reading of the present rule is absurd. Given that there is a substantial question about the purpose of medical assistance reimbursement, we cannot say that our reading would lead to an absurd result not intended by the law. It is up to DHFS to fashion a rule that means what the department wants it to say and says what it wants it to mean. Only then can DHFS seek to justify such a rule with its view of the purpose of the medical assistance recovery program.

Because DHFS' interpretation of the hardship waiver rule went against the clear language therein, we affirm the circuit court's reversal of the department's decision.

*By the Court.*—Order affirmed.