HILLHAVEN CORPORATION, Vencor, Inc., Petitioners-Respondents,

v.

DEPARTMENT OF HEALTH AND FAMILY SERVICES of the State of Wisconsin, and Bureau of Health Care Financing, Respondents-Appellants.

Court of Appeals

*No. 99–0684. Submitted on briefs October 8, 1999.—Decided December 23, 1999.*

## 2000 WI App 20

(Also reported in 606 N.W.2d 572.)

On behalf of the respondents-appellants, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Thomas C. Bellavia*, assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Richard J. Krill* and *Ralph J. Ehlinger* of *Ehlinger & Krill, S.C.,* of Milwaukee.

Before Dykman, P.J., Vergeront and Deininger, JJ.

¶ 1.  DYKMAN, P.J.  The Department of Health and Family Services (DHFS) and the Bureau of Health

Care Financing appeal from an order of the Dane County Circuit Court reversing a DHFS decision. DHFS determined that a trust set up by the Hillhaven Corporation, Vencor, Inc., to provide health benefits to its employees was "self-insurance" for purposes of DHFS's Medical Assistance Program reimbursement methodology. The circuit court concluded that there was no basis by which to categorize the Hillhaven trust as self-insurance. DHFS argues that the circuit court erred because DHFS's determination that the trust was self-insurance was consistent with the purpose of its reimbursement rules and consistent with the commonly understood definition of self-insurance under Wisconsin law. Because we conclude that DHFS's determination was both reasonable and consistent with the purpose of the reimbursement rules, we defer to DHFS's decision and reverse the decision of the circuit court.

## I. Background

¶ 2. Hillhaven owns several nursing homes in Wisconsin that are certified providers under the Medical Assistance Program. Hillhaven provides health insurance as a fringe benefit for the employees at these nursing homes. Rather than contracting with a commercial insurer, Hillhaven created the Hillhaven Corporation Voluntary Participant Benefit Trust. Instead of paying more expensive premium payments to a third-party insurance company, Hillhaven and the participating employees make contributions to the trust fund. The fund is used to provide health-care benefits to participating Hillhaven employees, former employees, and their dependents, and to pay administrative expenses. Under the terms of the trust, Hillhaven has the right to determine the amounts and

the times of its contributions, but Hillhaven contracted with an insurance company to administer the trust and set the amount of the contributions. The assets of the trust fund can be used only for providing health benefits to employees and for administrative expenses. Contributions to the trust fund may never revert to Hillhaven's control.[1] If the trust funds are ever inadequate to pay any claims under Hillhaven's health plan, Hillhaven must cover the deficiency.[2]

¶ 3. Under § 49.45(6m)(ag), STATS.,[3] DHFS is charged with establishing the rate system for reim-

---

[1] Article VI of the trust, "NONREVERSION OF FUND," provides:

> The assets of the Fund shall be held for the exclusive purpose of providing the Plan benefits and defraying reasonable expenses of administration as described in this Agreement and shall never inure or revert to the benefit of the Company with the exception that contributions paid by a mistake of fact shall be allowable, if returned within one (1) year after payment in the Fund.

[2] Article II, § 3(a) of the trust provides:

> The Fund shall be funded with Company and/or Participant Contributions made at such intervals and in such amounts and manner, through payroll deductions, or otherwise, as prescribed in the provisions of the Plan. In the event and to the extent such contributions are not sufficient from time to time to cover the benefits payable under the Plan and other payments from the Fund authorized pursuant to Section 2 of Article II, the Company shall contribute or cause to be paid to the Fund such amount or amounts as may be necessary to cover the deficiency.

[3] Section 49.45(6m)(ag), STATS., provides, in pertinent part:

> Payment for care provided in a facility under this subsection made under s. 20.435 (1)(p) or (5)(b) or (o) shall, except as provided in pars. (bg), (bm) and (br), be determined according to a prospective payment system updated annually by the department. The payment system shall implement standards that are necessary and proper for providing patient care and that meet quality and safety standards established under subch. II of ch. 50 and ch. 150. The payment system shall reflect . . . .

bursing nursing homes participating in the Medical Assistance Program. As stipulated in § 49.45(6m)(ag), DHFS updates its rate-setting methodology each year in the "Methods of Implementation For Title XIX Nursing Home Payment Rates" (Methods).[4] DHFS's Bureau of Health Care Financing (Bureau) is primarily responsible for establishing the nursing home payment rates. The Methods states that its purpose is "to ensure that nursing homes . . . are paid appropriately for care provided to Medicaid residents in a cost-efficient fashion." The Methods includes a section devoted to reimbursement for nursing homes that use self-insurance plans. Section 1.248, "Self-Insurance Costs," provides:

> The allowable expense for self-insurance plans is the actual claims paid during the cost reporting period. At the facility's option, accrual of pending claims may be made to the extent that such claims are paid within 75 days of the close of the cost reporting period. Such accrued claims may not be expensed in the following year's cost report. If a facility's self-insurance fund is managed by an independent (non-related) trustee, the fee paid to the trustee may be included in allowable self-insurance costs. If actuarial determinations are performed by an independent (non-related, non-employee) actuary, the fee paid to the actuary may be included in allowable self-insurance costs. Allowable self-insurance costs may also include the premium costs of reinsurance ("stop loss") policies purchased from an

---

1. A prudent buyer approach to payment for services, under which a reasonable price recognizing selected factors that influence costs is paid for service that is of acceptable quality.

[4] Any reference to the "Methods" in this opinion is to the "Methods of Implementation For Title XIX Nursing Home Payment Rates For The Period July 1, 1992 Through June 30, 1993," the applicable Methods in this case.

unrelated company and any costs to administer the self insurance plan. Any proceeds from these policies will be offset against the claims paid during the cost reporting period of receipt.

¶ 4.   For the July 1, 1992 through June 30, 1993 reimbursement rate period, the Bureau determined that Hillhaven's trust constituted a self-insurance plan, as covered by § 1.248 of the Methods. Thus, Hillhaven's reimbursement rate was based on the administrative expenses of the trust and the benefit claims actually paid out, rather than on the amount of Hillhaven's contributions to the trust. Hillhaven petitioned DHFS to review the Bureau's decision.

¶ 5.   After a hearing, the DHFS hearing examiner decided that the Bureau correctly determined that Hill- haven's trust was self-insurance. The examiner acknowledged that "self-insurance" was not defined in the Methods or in § 49.45, STATS. She stated that "the Trust fits neither the classic example of self-insurance . . . nor the requirements of an unrelated insurance company," but:

> [u]nder the Methods, a nursing home is either self-insured or uses an unrelated outside insurance company. The Trust is not an unrelated outside insurance company because it was created to insure only persons related to Hillhaven by employment; it does not write insurance contracts with a larger public. There are many ties to Hillhaven.

The examiner also relied on the definitions of "self-insurance" and "insurance company" from BLACK'S LAW DICTIONARY.[5] Finally, she stated, "If I were to accept Hillhaven's premise that the Trust is not a self-insur-

[5] The edition of BLACK'S LAW DICTIONARY used by the hearing examiner defines "self-insurance" as:

ance plan because the Trust is not insuring the Trust (self), I doubt that any segregated fund or trust could ever be characterized as self-insurance."

¶ 6. Hillhaven petitioned the Dane County Circuit Court to review the hearing examiner's decision. The circuit court determined that Hillhaven's trust was not easily categorized as self-insurance or insurance for purposes of the Methods. It remanded the action so that DHFS could determine the history and intent behind the applicable sections of the Methods and issue another decision.

¶ 7. On remand, the hearing examiner again decided that the Bureau had correctly determined Hillhaven's trust to be a self-insurance plan. She acknowledged that:

> The legislative history on this section can be charitably described as minimal. The Bureau has been able to come up with no documented commentary that explains the intended parameters of § 1.248. . . . There is no "smoking gun" in these documents that compellingly places the Trust into the category of self-insurance or a third-party insurance company.

The examiner explained that the only useful legislative history was that, from 1988 through 1990, § 1.248 of the Methods included an exception for contributions to Medicare self-insurance plans during any fiscal year ending on or before December 31, 1988. For those

---

The practice of setting aside a fund to meet losses instead of insuring against such through insurance. A common practice of business is to self-insure up to a certain amount, and then to cover any excess with insurance. Workers' compensation obligations may also be met through this method if statutory requirements are met.

BLACK'S LAW DICTIONARY 1360 (6th ed. 1990). It defines "insurance company" as a "corporation or association whose business is to make contracts of insurance." *Id.* at 807.

plans, DHFS could base reimbursement on the contributions to the plans, rather than on the actual claims paid out. This exception was removed in 1991. The examiner concluded that this indicated that the Methods drafter could have allowed reimbursement for contributions to certain self-insurance plans, instead of just for actual claims paid, but elected not to.

¶ 8. The examiner stated that, although the legislative history of the Methods was not persuasive, she had to "make a decision one way or the other." She concluded that the reasoning in her original decision was still sound. She also adopted the following argument from the Bureau's brief on remand:

> In creating its Methods of Implementation section concerning self-insurance, the Bureau was obviously mindful that an insurance system controlled by a nursing home presents an inherent risk that the amounts of the nursing home's premiums will be inflated. Accordingly, to reduce the likelihood of abuse by an insurance program operated by the nursing home, the Bureau relied on costs less likely to be artificially increased: namely the claims paid out in benefits, rather than the amounts paid by the nursing home as premiums.
>
> There may indeed be nursing homes who operate their own insurance systems and who are not in fact attempting to inflate their costs. However, as the federal courts have noted, it is perfectly appropriate to create a requirement for prophylactic purposes. In the Hillhaven situation, the fact that its Trust is under the control of Hillhaven officials and that Hillhaven itself determines the timing and amounts of contributions to the Trust points to the conclusion that Hillhaven presents the very situation about which the Methods of Implementation

are concerned: the potential for cost inflation, even if costs are not inflated in actuality.

¶ 9. Hillhaven petitioned the Dane County Circuit Court to review DHFS's decision on remand. The circuit court reversed, concluding that there was no basis by which to categorize Hillhaven's trust as "self-insurance" for purposes of § 1.248 of the Methods. DHFS appeals.

## II. Standard of Review

¶ 10. DHFS argues that its decision to apply § 1.248 of the Methods in this case is entitled to due deference because of its expertise in administering the Medical Assistance Program's reimbursement system. DHFS asserts that we should uphold the hearing examiner's decision if we conclude that it was reasonable. Hillhaven contends that the hearing examiner's decision is subject to de novo review because the interpretation of "self-insurance" was an issue of first impression for DHFS.

¶ 11. Hillhaven also argues that DHFS waived any argument that a standard other than de novo review should be applied to the hearing examiner's decision. Hillhaven points out that, in its first decision, the circuit court reviewed DHFS's decision de novo. Hillhaven argues that the court's order to remand was a final determination of the action, and since DHFS did not appeal that determination, the court's decision to use de novo review must stand. However, in an appeal of an administrative agency decision, we review the decision of the agency, not that of the circuit court. *See Lilly v. DHSS*, 198 Wis. 2d 729, 734, 543 N.W.2d 548, 550 (Ct. App. 1995). The trial court's decision regarding the proper standard of review is not relevant to our review of DHFS's decision.

¶ 12. The interpretation of an administrative rule or regulation, like the interpretation of a statute, is a question of law that we review de novo. *See Gorchals v. DHFS*, 224 Wis. 2d 541, 545, 591 N.W.2d 615, 617 (Ct. App. 1999); *Franklin v. Housing Auth. of Milwaukee*, 155 Wis. 2d 419, 425–26, 455 N.W.2d 668, 672 (Ct. App. 1990). However, an administrative agency's interpretation of its own rules or regulations is controlling unless plainly erroneous or inconsistent with the language of the rule or regulation.[6] *See State*

---

[6] The deference we apply to an agency interpretation of its own rule or regulation is different than the deference we give to an agency interpretation of a statute. Although the interpretation of a regulation and a statute are both questions of law, *see Franklin v. Housing Auth. of Milwaukee*, 155 Wis. 2d 419, 425–26, 455 N.W.2d 668, 672 (Ct. App. 1990), we determine the proper deference for agency statutory interpretations in a different manner. Agency statutory interpretations are generally entitled to one of three levels of deference: "great weight," "due weight" or no deference. *See Zignego Co. v. DOR*, 211 Wis. 2d 819, 823–24, 565 N.W.2d 590, 592 (Ct. App. 1997). When applying great weight deference, we "will uphold an agency's reasonable interpretation that is not contrary to the clear meaning of the statute, even if . . . an alternative interpretation is more reasonable." *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 287, 548 N.W.2d 57, 62 (1996). Under the due weight standard, we will not overturn a reasonable agency interpretation that is consistent with the purpose of the statute unless there is a more reasonable interpretation. *See id.* at 286–87, 548 N.W.2d at 62.

In contrast, for agency interpretations of their own rules or regulations, we generally apply only one level of deference. This level of deference has been, at times, termed "controlling weight," or even "great weight." *RTE Corp. v. DILHR*, 88 Wis. 2d 283, 290, 276 N.W.2d 290, 293 (1979); *Vonasek v. Hirsch & Stevens, Inc.*, 65 Wis. 2d 1, 7, 221 N.W.2d 815, 818 (1974); *Irby v.*

*v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904, 908–09 (1998); *Irby v. Bablitch*, 170 Wis. 2d 656, 658, 489 N.W.2d 713, 714 (Ct. App. 1992). We will defer to DHFS's interpretation of "self-insurance" under § 1.248 of the Methods if it is reasonable and consistent with the purpose of the regulation. *See Franklin*, 155 Wis. 2d at 426, 455 N.W.2d at 672.

## III. Analysis

¶ 13.   DHFS argues that we should uphold the hearing examiner's conclusion that the Bureau correctly determined Hillhaven's trust to be a self-insurance plan, as covered by § 1.248 of the Methods. DHFS contends that the examiner's decision was reasonable and consistent with the Methods' purpose of preventing inflated reimbursement rates. It also argues that categorizing the trust as self-insurance is consistent with Wisconsin law under *Hillegass v. Landwehr*, 176 Wis. 2d 76, 499 N.W.2d 652 (1993), because Hillhaven did not transfer risk to another party under the terms of the trust.

---

*Bablitch*, 170 Wis. 2d 656, 658, 489 N.W.2d 713, 714 (Ct. App. 1992). However, it is described using different terminology than that used for the "great weight" deference applied to statutory interpretations. *See State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904, 908–09 (1998) (holding that an agency's interpretation of its own regulations "is controlling in determining their meaning unless plainly erroneous or inconsistent with the regulations"). Despite the different terminology, the deference for an agency interpretation of its own rules appears to be similar to the "great weight" level of deference applied to agency statutory interpretations, as both turn on whether the agency interpretation is reasonable and consistent with the meaning or purpose of the regulation or statute. *See UFE*, 201 Wis. 2d at 287, 548 N.W.2d at 62; *Franklin*, 155 Wis. 2d at 426, 455 N.W.2d at 672.

¶ 14. Hillhaven asserts that the hearing examiner was incorrect because the trust does not fit the legal definition of self-insurance. Hillhaven argues that, because it did not simply set aside a fund to meet losses, but instead established a separate legal entity to which it made non-reverting payments, it was not self-insuring. Hillhaven explains that any contributions it makes to the trust in excess of the health benefit claims for the year are kept in reserve as property of the trust. Since Hillhaven has no control over these reserves and they are used only to cover future health benefit claims, the full amount of the contributions should be reimbursable.

¶ 15. We conclude that the hearing examiner's decision that the trust was self-insurance under § 1.248 of the Methods was reasonable. The term "self-insurance" is not defined in the Methods or in the statute under which DHFS promulgates the Methods. However, DHFS's application of § 1.248 of the Methods to the Hillhaven trust was consistent with the commonly understood definition of self-insurance as explained in *Hillegass*.

¶ 16. In *Hillegass*, the supreme court examined the definitions of insurance from BLACK'S LAW DICTIONARY and WEBSTER'S NEW COLLEGIATE DICTIONARY, and stated that "the critical element in both definitions is a contractual shifting of risk in exchange for premiums." *Hillegass*, 176 Wis. 2d at 81, 499 N.W.2d at 654–55. The court then explained the difference between contractual, third-party insurance and self-insurance:

> Whereas contractual insurance policies involve a third-party insurer underwriting the insured's risk in exchange for premium payments, self-insurers retain their own risk in exchange for not paying

411

premiums. The parties implicated in the risk-shifting may change depending on the particular arrangement, but the essence of the transaction remains the same: exchanging future liability for premium payments. In the words of the circuit court: "self-insurance is just a form of insurance. . . . the modifying term 'self' just indicates where it emanates. . . ."

*Id.* at 81–82, 499 N.W.2d at 655 (footnote omitted). In *Hillegass*, Burlington Air Express self-insured by retaining its own risk "for the first $1 million rather than pay premiums to a third-party insurer." *Id.* at 82, 499 N.W.2d at 655. The supreme court explained that in doing so, "Burlington was able to exercise its business discretion in devising a scheme of risk management that it considered most advantageous. A different company might have reached a contrary conclusion and contracted for coverage with a third-party insurer." *Id.*

¶ 17.   In this case, Hillhaven made a similar decision to reduce expenses by covering employee health benefits through its trust, instead of paying premiums to a third-party insurer. In doing so, Hillhaven retained the risk associated with health insurance coverage. Under the terms of the trust, in the event that benefit claims in a particular year exceed the contributions to the trust fund, Hillhaven must pay the difference. Had Hillhaven contracted with a third-party insurer, the insurer would have accepted the risk of paying all possible claims in exchange for receiving premiums. Although the trust fund should be sufficient to cover most claims, Hillhaven retains the ultimate responsibility to ensure that all claims covered under

their health plan are paid. As the court in *Hillegass* explained, this is the essence of self-insurance.[7]

¶ 18.   We also conclude that the hearing examiner's determination that Hillhaven's trust is covered by § 1.248 of the Methods was consistent with the Methods' purpose. As stated in § 1.110 of the Methods, its purpose is "to ensure that nursing homes . . . are paid appropriately for care provided to Medicaid residents in a cost-efficient fashion." Under the chapter on "Allowable Expenses," § 1.210 provides that "[n]ecessary and proper expenses are usually expenses incurred by a reasonably prudent buyer. . . ." Section 1.230 further states that a "prudent and cost-conscious buyer not only refuses to pay more than the going price for an item or service, but also seeks to economize by minimizing cost." The Methods are thus designed to promote cost-efficiency.

¶ 19.   The hearing examiner's conclusion that the Hillhaven trust was self-insurance was consistent with

---

[7] Hillhaven argues that its trust does not meet the definition of self-insurance under *Hillegass v. Landwehr*, 176 Wis. 2d 76, 499 N.W.2d 652 (1993), and BLACK'S LAW DICTIONARY. Hillhaven reads *Hillegass* and BLACK'S LAW DICTIONARY as supporting four specific distinctions between self-insurance and contractual insurance, regarding: (1) who pays claims; (2) who controls the funds used to pay claims; (3) who sets the amount of premiums or contributions to the funds; and (4) whether "the risk of loss is shifted to the third-party insurer up to (but not beyond) the limits of the insurance." It argues that based on these distinctions, the trust more closely resembles contractual insurance. However, Hillhaven's four distinctions appear to be self-serving and are not based on any specific reference to legal authority. We will not consider arguments that are not supported by reference to legal authority. *See Phillips v. Wisconsin Personnel Comm'n*, 167 Wis. 2d 205, 228, 482 N.W.2d 121, 130 (Ct. App. 1992).

the policy of promoting cost-efficiency. Under § 1.248, self-insurers are reimbursed only for actual claims paid out, along with the related expenses of self-insuring. Although Hillhaven contracts with an insurance company to determine the amount of its contributions to the trust fund, Article I, § 5 of the trust states that Hillhaven "shall make contributions to the Fund in such amounts and at such times as it shall determine." The expertise of the insurance company may be useful in determining the amount of contributions, so as to reduce the risk that the trust will have insufficient funds to cover any potential claims, but Hillhaven retains the authority to set the amount of its contributions. The trust mandates that "[t]he contributions shall be based on the amounts necessary to pay any premiums becoming due, [and] to provide for the benefits expected to become payable under the Plan." However, the trust does not prevent Hillhaven from overestimating the amount of benefits expected to become due. If Hillhaven were reimbursed for its contributions to the trust, rather than for the actual claims paid out, then Hillhaven, by setting the amount of its contributions, would also be setting the amount of its reimbursement, at least as to its percentage of Medicaid patients. Such an arrangement could open the door to inefficiency, and would be contrary to the purpose of the Methods.

¶ 20.  Hillhaven argues that determining the trust to be self-insurance under § 1.248 of the Methods will not prevent cost inflation. Hillhaven asserts that its trust provides no incentive to inflate costs because once Hillhaven contributes to the trust, it loses all control of the money. However, if § 1.248 is not applied to the trust, Hillhaven would recover a significant portion of the money it contributes. If we were to accept Hill-

haven's argument that the trust is not self-insurance, it would have little incentive not to inflate the amount of its contributions in a particular year because it would be largely reimbursed for those contributions regardless of whether they were needed to pay actual claims. Whether or not Hillhaven would actually inflate its costs, it was reasonable for the hearing examiner to interpret the Methods in a manner that would most likely reduce cost inflation.

¶ 21.  Hillhaven further contends that the hearing examiner's conclusion that § 1.248 applies to the trust is contrary to the "prudent buyer approach to payment for services" called for in § 49.45(6m)(ag)1, STATS. Hillhaven asserts that by setting up a trust in order to avoid paying higher premiums to a third-party insurer, it was a "prudent buyer." It argues that if nursing homes are not fully reimbursed for their contributions to such trusts, they will have little incentive not to use third-party insurers, thus incurring more expensive premiums and more costly reimbursement rates. We disagree. As stated in § 1.110 of the Methods, nursing homes are reimbursed only "for care provided to Medicaid residents." Thus, a nursing home will not be reimbursed for the percentage of employee health benefits not associated with providing service to Medicaid patients. A nursing home would have incentive to use a self-insurance plan in order to incur savings for that part of the plan not attributable to care provided to Medicaid patients.

¶ 22.  Finally, Hillhaven argues that the legislative history the hearing examiner discussed in her decision on remand does not support DHFS's interpretation of self-insurance. Hillhaven asserts that the fact that the Methods drafter deleted the exception for contributions to pre–1989 Medicaid self-insurance plans is

ambiguous and does not demonstrate DHFS's intent regarding self-insurance in general. We will defer to an agency interpretation of its own regulations if it is reasonable and consistent with the purpose of the regulation. *See Franklin*, 155 Wis. 2d at 426, 455 N.W.2d at 672. The sparse history of § 1.248 may be open to varied interpretations, but the hearing examiner's interpretation of that history does not render her decision unreasonable.

¶ 23.   We defer to the hearing examiner's determination that the Hillhaven trust is self-insurance as covered by § 1.248 of the Methods, as it was reasonable and consistent with the Methods' purpose. Accordingly, we reverse the decision of the circuit court.

*By the Court.*—Order reversed.