John MARDER, Plaintiff-Appellant-Cross-Respondent,†

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 03–2755. Oral Argument June 28, 2004.—Decided August 10, 2004.*

2004 WI App 177

(Also reported in 687 N.W.2d 832.)

† Petition to review granted 12-15-2004.

189

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Aaron N. Halstead* of *Shneidman, Hawks & Ehlke, S.C.*, Madison. There was oral argument by *Aaron N. Halstead*.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jennifer Sloan Lattis*, assistant attorney general. There was oral argument by *Jennifer Sloan Lattis*.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. John Marder appeals an order reversing the University of Wisconsin Board of Regents' termination of his employment as a tenured professor at UW-Superior and remanding the case to the Board. The circuit court concluded that the University's termination process must comply with the contested case provisions of WIS. STAT. ch. 227.[1] Marder alleged the Board had ex parte communication with, among others, the Chancellor. The Board admitted the ex parte communication with the Chancellor but argued it was proper. The circuit court concluded that, in a contested case, ex parte communications are prohibited by § 227.50(1)(a). The court remanded the case to the Board "for further action under a correct interpretation of the law." On appeal, Marder argues that remand was inappropriate because the Board is too tainted to render a fair decision. Instead, he argues we should reverse the Board's decision and thereby reinstate his employment.

¶ 2. Alternatively, Marder disputes the circuit court's denial of his request to allow discovery. He argues that if we do not simply reverse the Board's decision, we should conclude that further discovery is necessary to determine what took place during the ex parte communications.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 3. The Board cross-appeals the circuit court's determination that the contested case provisions of WIS. STAT. ch. 227 apply. The Board argues that WIS. ADMIN. CODE ch. UWS 4 supercedes WIS. STAT. ch. 227. It contends that WIS. ADMIN. CODE § UWS 4.08 mandated the closed meeting with the Chancellor and that the code did not require Marder's presence. Thus, the Board urges us to reverse the circuit court's determination that the contested case provisions apply. Marder responds that a closed meeting violates his right to due process of law.

¶ 4. We agree with the Board that the administrative code provisions apply, not the contested case provisions of WIS. STAT. ch. 227. However, we conclude that, while the code mandated a meeting between the Board and the Chancellor, the code also required Marder's presence at the meeting. Furthermore, as a matter of due process, Marder has a right to know whether any new and material information was discussed at the closed meeting. Because the record does not indicate what the Board and the Chancellor discussed, we remand to the circuit court for it to make that finding. The court should then determine, based on its finding, whether Marder's right to a fair hearing was violated by the ex parte communication.

## BACKGROUND

¶ 5. Marder had been employed by the University of Wisconsin System since 1987 and was a tenured faculty member at UW-Superior. In 1999, the Chancellor at UW-Superior, Julius Erlenbach, served Marder with a Statement of Charges. It contained eighteen separate charges which "evince[d] a pattern of behavior that is inconsistent with the expectations this university has of tenured faculty members and which further

192

violate standards of professional conduct, thus constituting just cause to dismiss you from your tenured faculty position at UW-Superior." It advised Marder that the Chancellor was terminating Marder's employment unless Marder requested a hearing on the charges. Marder requested a hearing, pursuant to WIS. ADMIN. CODE § UWS 4.04.

¶ 6. In January 2000, a committee of four tenured faculty members at UW-Superior held two days of hearings. The committee issued a unanimous decision rejecting the Chancellor's recommendation to terminate Marder. The Chancellor then recommended Marder's termination to the Board of Regents. The Board's Personnel Matters Review Committee reviewed the evidence and on three separate occasions unanimously recommended that the Board reject termination.[2] However, the Board voted 11–3 to terminate Marder's employment in June 2001. The only ones who voted not to terminate Marder's employment were members of the Personnel Matters Review Committee.

¶ 7. Marder petitioned the Douglas County Circuit Court for review of the Board's decision. Marder sought a reversal of the Board's decision to terminate him. In the alternative, he sought leave to take testimony and discovery regarding several ex parte communications.

¶ 8. First, Marder alleged that the Board had improper contact with the Office of the General Counsel. Second, he alleged that one of the Board's regents had improper contact with the Chancellor. The circuit court concluded these claims were mere speculation because there was no evidence to suggest any improper ex parte communication.

---

[2] The Board twice remanded the matter to the Personnel Matters Review Committee to reconsider its conclusion.

¶ 9. Finally, Marder alleged there was a private meeting between the Board and the Chancellor before the Board rendered its decision. The Board admitted it met with the Chancellor without Marder being present. The meeting occurred in closed session of the Board. After the meeting, the Board reconvened in open session and terminated Marder's employment.

¶ 10. WISCONSIN STAT. § 227.50(1)(a) contains a prohibition against ex parte communications. However, the Board argued the proceedings were not a contested case under WIS. STAT. § 227.01, and thus the provisions of ch. 227 did not apply. Instead, the Board maintained the procedure under WIS. ADMIN. CODE ch. UWS 4 applies. The Board argued that WIS. ADMIN. CODE § UWS 4.08 mandated the closed meeting with the Chancellor and therefore it was not an improper communication.

¶ 11. The circuit court concluded that this was a contested case under WIS. STAT. ch. 227. It also concluded that, while the code required the Board to consult with the Chancellor, WIS. STAT. § 227.50 required Marder to be present. Thus, the court remanded the case to the Board, pursuant to WIS. STAT. § 227.57(5), for "further action under a correct interpretation of the law."

¶ 12. Marder had also requested leave to take testimony and discovery to determine what was discussed during the alleged ex parte communications. The court denied the request, stating it was "not needed to assist the court in making a decision."

## DISCUSSION

### Alleged ex parte communications

¶ 13. Marder alleges three different incidents of ex parte communication. We must determine whether any of these alleged incidents were in fact improper.

194

¶ 14. Marder first contends there were improper contacts between the Board and the Office of the General Counsel. Two attorneys from the Office of the General Counsel represented the Chancellor in this matter. Another attorney from the Office also advised the Board on procedure during the dismissal process. Marder contends this was improper because it allowed the Chancellor to influence the Board through the Office of the General Counsel. He argues the Board was not impartial as a result.

¶ 15. Marder cites *Guthrie v. WERC*, 111 Wis. 2d 447, 461, 331 N.W.2d 331 (1983), which states that an administrative decision-maker is disqualified if he or she has previously acted as counsel. This is because "the risk of unfairness [was] intolerably great," resulting in a denial of due process. Marder argues the same principle applies here because the Office served as advisor to the Board as well as counsel to the Chancellor. He contends the attorneys at the Office had discussions regarding his termination that were never disclosed to him. Thus, he argues the Board lost its impartiality and thereby denied him his due process rights because the risk of unfairness is intolerably great.

¶ 16. In *Bracegirdle v. Department of Regulation & Licensing*, 159 Wis. 2d 402, 414, 464 N.W.2d 111 (Ct. App. 1990), we concluded that the *Guthrie* rule did not apply to the facts of that case. In *Bracegirdle*, the chairperson of a board advised the prosecuting attorney and also prepared the board's decision to reprimand Bracegirdle. *Id*. We determined the chairperson acted only as an advisor to the prosecuting attorney. *Id*. Thus the risk of unfairness was not intolerably great. The same applies here where the Office was merely advising the Board on procedural matters and was not a decision-maker. *See also Nu-Roc Nursing Home v. State*

195

*DHSS*, 200 Wis. 2d 405, 420, 546 N.W.2d 562 (Ct. App. 1996) (applying *Bracegirdle* and limiting *Guthrie* to only bar from decision-making those who had previously represented a party in a dispute).

■

¶ 17. Because *Guthrie* is inapplicable, Marder must "show special facts and circumstances to demonstrate that the risk of unfairness is intolerably high." *See Nu-Roc*, 200 Wis. 2d at 420 (quoting *Bracegirdle*, 159 Wis. 2d at 415). This strong showing is necessary to rebut the presumption of a state officer's honesty and integrity. *Id.* A plaintiff can meet this burden by showing that the adjudicator had become "psychologically wedded" to a predetermined disposition of the case." *Id.* Marder fails to meet this burden. He alleges that the attorneys representing the Chancellor spoke with the attorney advising the Board regarding the merits of the case. However, the attorney representing the Board provided only procedural advice to the Board and did not advise it on the merits of the case. There is no indication that the Office of the General Counsel so influenced the Board that the Board's disposition was "psychologically wedded" to the Chancellor's position. We therefore conclude that the Office's participation was not improper.

¶ 18. Marder's second allegation of improper communication relates to the Chancellor and one of the Board's regents, Toby Marcovich. The Chancellor and Marcovich flew together on Marcovich's private plane from Superior to Milwaukee for a Board meeting. This was the same meeting where the Board voted to terminate Marder's employment. Marcovich made the motion to terminate Marder's employment. Marder alleges, on information and belief, that the Chancellor and Marcovich discussed the matter during the flight to Milwaukee.

¶ 19. The due process clause requires that an adjudicator in an administrative hearing be fair and impartial. *State ex rel. DeLuca v. Common Council*, 72 Wis. 2d 672, 684, 242 N.W.2d 689 (1976). However, administrative adjudicators, such as the regents here, retain a presumption of honesty and integrity and "are assumed to be men of conscience and intellectual discipline capable of judging a particular controversy on the basis of its own circumstances." *Withrow v. Larkin*, 421 U.S. 35, 54 (1975). A strong showing is necessary to rebut this presumption. *Nu-Roc*, 200 Wis. 2d at 420. Marder has merely speculated that because the Chancellor and Regent traveled together, they must have discussed the matter. However, the presumption is that the Chancellor and Regent took their responsibilities seriously, understood that discussing the matter would be improper and therefore avoided any mention of it. Marder has not made a strong showing that would rebut the presumption that the Chancellor and Marcovich acted in any other way than with honesty and integrity.

¶ 20. Finally, Marder alleges the Board improperly met with the Chancellor outside Marder's presence before it decided to terminate Marder's employment. The Board admits that it met privately with the Chancellor but contends the meeting was required and was not a violation of Marder's due process rights. This is the primary issue in this case and we now turn to discussion of it.

### Whether this matter is a contested case under WIS. STAT. ch. 227

■

¶ 21. We must determine whether this matter is a contested case under WIS. STAT. ch. 227, as Marder

197

contends. If it is a contested case, WIS. STAT. § 227.50(1)(a)1 clearly prohibits ex parte communications and WIS. STAT. § 227.50(2) provides specific remedies. Our determination involves statutory interpretation, which is a question of law we decide independently. *See State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476 (Ct. App. 1998).

¶ 22. WISCONSIN STAT. § 227.50(1)(a)1 states:

> In a contested case, no ex parte communication relative to the merits . . . shall be made, before a decision is rendered, to the hearing examiner or any other official or employee of the agency who is involved in the decision-making process, by:

> An official of the agency or any other public employee or official engaged in prosecution or advocacy in connection with the matter under consideration or a factually related matter.

¶ 23. WISCONSIN STAT. § 227.07(3) states that a contested case is "an agency proceeding in which the assertion by one party of any substantial interest is denied or controverted by another party and in which, after a hearing required by law, a substantial interest of a party is determined or adversely affected by a decision or order." Marder first argues that the Board is an agency. Second, he maintains the substantial interest involved here is his tenure as a professor, which is a property interest. Third, the interest was adversely affected by the Board's decision to terminate him. Thus, Marder concludes that this is a "contested case" and WIS. STAT. ch. 227 applies. Marder contends the Board violated § 227.50(1)(a)1 by having the ex parte meeting with the Chancellor.

¶ 24. Marder's argument does not account for WIS. STAT. § 36.13(5):

Any person having tenure may be dismissed only for just cause and only after due notice and hearing. Any person having a probationary appointment may be dismissed prior to the end of the person's contract term only for just cause and only after due notice and hearing. The action and decision of the board in such matters shall be final, subject to judicial review under ch. 227. *The board and its several faculties shall develop procedures for the notice and hearing* which shall be promulgated by rule under ch. 227. (Emphasis added).

This statute specifically authorizes the Board to adopt termination procedures. Pursuant to the statute, the Board adopted WIS. ADMIN. CODE ch. UWS 4, which lays out the process to be applied in faculty dismissal cases. While WIS. STAT. § 36.13(5) provides that dismissal decisions are reviewed under ch. 227, it does not indicate that any other provisions of ch. 227 apply.

■■■■

¶ 25. Furthermore, the code provisions are specific to faculty dismissal cases. The contested case provisions of WIS. STAT. ch. 227 are more general. Where specific and general provisions conflict, specific provisions take precedence. *See State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 596, 547 N.W.2d 587 (1996). Thus, we conclude the contested case provisions of WIS. STAT. ch. 227 do not apply in this case.

### The Administrative Code

¶ 26. The Board argues that WIS. ADMIN. CODE § UWS 4.08(2) required the closed meeting with the Chancellor. That section states:

If, after the hearing, the board decides to take action different from the recommendation of the faculty hearing committee and/or the chancellor, then before taking

action the board shall consult with the faculty hearing committee and/or the chancellor, as appropriate.

The Board concludes that because the meeting was expressly authorized by the code, it did not constitute an improper ex parte communication.

¶ 27. The interpretation of an administrative rule or regulation, like the interpretation of a statute, is a question of law we review independently. An agency's interpretation of its own rules is controlling unless it is plainly erroneous or inconsistent with the language of the rule.[3] *Hillhaven Corp. v. DHFS*, 2000 WI App 20, ¶ 12, 232 Wis. 2d 400, 606 N.W.2d 572. We conclude the Board's interpretation of the code as not requiring Marder's presence at the meeting with the Chancellor was plainly erroneous and inconsistent with the rest of the code's provisions.

¶ 28. WISCONSIN ADMIN. CODE § UWS 4.08(2) does not expressly state that a faculty member must be present at the consultation between the Board and the

---

[3] The deference applied to an administrative agency's interpretation of its own rules is different than the deference we give to its interpretation of a statute. *Hillhaven Corp. v. DHFS*, 2000 WI App 20, n.6, 232 Wis. 2d 400, 606 N.W.2d 572. Statutory interpretations are generally entitled to one of three levels of deference—great weight, due weight, or no deference. *Id.* However, agency interpretations of their own rules generally receive only one level of deference, called either controlling weight or great weight. *Id.* Despite the difference in terminology, the deference we give to an agency interpretation of its own rules is similar to the great weight standard applied to statutory interpretations. *Id.* Both turn on whether the agency's interpretation is reasonable and consistent with the meaning or purpose of the regulation or statute. *Id.*

Chancellor. However, an administrative rule cannot be applied in isolation. *McGarrity v. Welch Plumbing*, 104 Wis. 2d 414, 427, 312 N.W.2d 37 (1981). If the rule is part of a comprehensive statutory and regulatory scheme, it must be applied in conjunction with its companion statutes and rules. *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 847, 454 N.W.2d 55 (Ct. App. 1990).

¶ 29. WISCONSIN ADMIN. CODE § UWS 4.05(1) describes the procedures a hearing must follow in order to protect a faculty member's due process rights. It states:

> A fair hearing for a faculty member whose dismissal is sought . . . shall include the following:
>
> . . . .
>
> (c) A right to be heard in his/her defense;
>
> . . . .
>
> (e) A right to confront and cross-examine adverse witnesses;
>
> (f) A verbatim record of all hearings, which might be a sound recording, provided at no cost.

Section UWS 4.06(1) states that "any hearing held shall comply with the requirements set forth in s. UWS 4.05." These two sections must be read in conjunction with § UWS 4.08(2), which requires a consultation between the Board and the Chancellor. Presumably the charges are discussed at the consultation. A decision is not made until after the consultation. We recognize that § UWS 4.08(2) uses language that mandates the consultation take place "after the hearing." However, the foregoing code sections demonstrate that, in reality, the consultation is a part of the overall hearing process, which is not

concluded until a decision is announced. "Any hearing" must comply with § UWS 4.05. Consequently, Marder had the right to hear and refute any allegations the Chancellor raised during the consultation. Because Marder did not have that opportunity, the Board failed to comply with the requirements of § UWS 4.05.

## Due Process

¶ 30. Even if the code does permit a closed meeting between the Board and the Chancellor, Marder had a constitutional due process right to hear the evidence against him and to respond to that evidence. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985), the United States Supreme Court discussed a public employee's property interest in continued employment: "If the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment." Due to this property interest, a public employee cannot be deprived of employment without due process. *Id.* As the Board acknowledged, a tenured professor has a property interest in his or her continued employment. *See, e.g., Slochower v. Board of Higher Educ.*, 350 U.S. 551 (1956); *Wieman v. Updegraff*, 344 U.S. 183 (1952).

¶ 31. The *Loudermill* Court addressed what process was due a public employee before the employee can be deprived of employment:

> [Due process] requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment . . . .
>
> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to

present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement .... *The tenured employee is entitled to oral or written notice of the charges against him, and explanation of the employer's evidence and an opportunity to present his side of the story* ....

*Loudermill*, 470 U.S. at 541–46 (emphasis added).

¶ 32. The Federal Court of Appeals applied *Loudermill* in *Stone v. FDIC*, 179 F.3d 1368 (Fed. Cir. 1999). Stone was terminated by the Merit Systems Protection Board from his position as a bank examiner at the Federal Deposit Insurance Corporation. He sought a review of his termination and argued ex parte communications took place between the deciding official and the official proposing his termination. *Id.* at 1372–73. He argued that his due process rights were violated and therefore he should be reinstated. *Id.* at 1373.

¶ 33. The *Stone* court stated:

The introduction of new and material information by means of ex parte communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond. When deciding officials receive such ex parte communications, employees are no longer on notice of the reasons for their dismissal and/or the evidence relied upon by the agency. Procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information. It is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process.

*Id.* at 1376. Here, when the Board consulted with the Chancellor outside Marder's presence, it potentially

violated Marder's due process rights. He may have been deprived of his right to notice and opportunity to be heard if the Board received additional information. Thus, the issue now becomes whether a due process violation actually occurred.

**Whether there was a due process violation**

¶ 34. The *Stone* court noted that not every ex parte communication undermines due process guarantees. Only those that introduce "new and material information to the deciding official will violate the due process guarantee of notice." *Id.* at 1377.

¶ 35. The *Stone* court concluded it was possible the ex parte communication in that case violated Stone's due process rights. It remanded the case to the Board to determine whether the ex parte communications introduced new and material information. If the information was new and material, then Stone's due process rights were violated. *Id.*

¶ 36. We reach a similar conclusion here. It is undisputed that an ex parte communication took place between the Board and the Chancellor. However, as the *Stone* court noted, not every ex parte communication undermines due process guarantees. *See id.* If the meeting between the Board and the Chancellor introduced new and material information, then Marder's due process rights were violated.

**Remedy**

¶ 37. The circuit court remanded to the Board. However, Marder contends the Board is too tainted by the ex parte communication to fairly render a decision.

Instead, Marder argues we should simply reverse the Board's decision to terminate him, pursuant to WIS. STAT. § 227.57(8). The Board argues the circuit court correctly remanded to the Board and we should do the same.

¶ 38. We choose a different route. Because not every ex parte communication is a violation of due process, it is necessary to determine whether any new or material information was discussed during the ex parte meeting. If there was, Marder had the right to notice and to be heard. However, the record is silent as to what the Board and the Chancellor discussed at their meeting.

■

¶ 39. The circuit court is in the best position to determine whether there was any new and material information discussed during the closed meeting. *See Milwaukee Journal v. Call*, 153 Wis. 2d 313, 319, 450 N.W.2d 515 (Ct. App. 1989) (the circuit court engages in fact-finding). On remand, the court may exercise its discretion in how it chooses to make that determination. It may allow discovery, take testimony or use any other method it deems appropriate. *See* WIS. STAT. § 227.57(1). If the court finds the ex parte communication involved new and material information, it can then determine the proper remedy under WIS. STAT. ch. 227. *See* WIS. STAT..§ 36.13(5). However, if there was not any new and material information, then Marder's due process rights were not violated.

*By the Court.*—Order reversed and cause remanded with directions.