STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Gregory A. BUSCH, Defendant-Appellant.

Supreme Court

*No. 96–2822. Oral argument March 4, 1998.—Decided April 30, 1998.*

(Also reported in 576 N.W.2d 904.)

430

For the plaintiff-respondent-petitioner the cause was argued by *Joseph DeCecco*, assistant district attorney with whom on the briefs was *Christopher W. Stock*, deputy district attorney and *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Rebecca Lyman Persick,* and *Law Offices of Barry S. Cohen, S.C.*, Elkhart Lake and *Christopher A. Mutschler*, and *Anderegg & Mutschler, LLP*, Fond du Lac and oral argument by *Dennis M. Melowski.*

¶ 1.   N. PATRICK CROOKS, J.   The State of Wisconsin (State) seeks review of a published decision of the court of appeals.[1] The court of appeals reversed the circuit court's order denying Gregory A. Busch's (Busch) motion to suppress evidence of the results of his breath alcohol test in which an Intoxilyzer 5000 Series 6600 machine was utilized to administer the test. Busch argued that the Intoxilyzer Model 5000 Series 6600 had not been evaluated by the Department of Transportation (DOT) prior to its use in the state in accord with Wis. Stat. § 343.305(6)(b) (1993–94)[2] and Wis. Admin. Code § TRANS 311.04 (January, 1993).[3] Busch asserted that the Series 6600 is a modified version of the Intoxilyzer Model 5000 Series 6400, and although the Series 6400 had been appropriately evaluated and approved, the Series 6600 had not.

¶ 2.   The circuit court for Sheboygan County, the Honorable L. Edward Stengel presiding, denied Busch's motion to suppress, finding that the changes made to the Series 6400 had not altered the analytical process of the machine. Hence, the circuit court concluded that the Series 6600 had been "appropriately tested and [is] in compliance with both state statutes and the administrative code." Accordingly, the breath alcohol test results were afforded a presumption of

[1] *State v. Baldwin*, 212 Wis. 2d 245, 569 N.W.2d 37 (Ct. App. 1997). At the court of appeals, the present case was consolidated with *Baldwin*. This court granted Busch's petition for review, *see State v. Busch*, 212 Wis. 2d 687, 569 N.W.2d 589 (1997), but denied Baldwin's petition for review, *see State v. Baldwin*, 212 Wis. 2d 688, 569 N.W.2d 590 (1997).

[2] All future references to the Wisconsin Statutes will be to the 1993–94 volumes.

[3] All future references to the Wisconsin Administrative Code will be to the January, 1993 version.

accuracy and admitted as evidence to establish Busch's breath alcohol concentration. The circuit court subsequently convicted Busch of operating a motor vehicle with a prohibited alcohol concentration contrary to Wis. Stat. § 346.63(1)(b), and Busch appealed.

¶ 3.  The court of appeals reversed the judgment of the circuit court. The court of appeals determined that the numerous changes to the Series 6400 did not result in a similar hybrid-type Series 6600; rather, a new quantitative breath testing instrument had been created. Before test results from the Series 6600 could be afforded a presumption of accuracy, the court of appeals determined it must be tested, evaluated, and approved in accord with Wis. Admin. Code § TRANS 311.04. The court of appeals remanded the case to the circuit court to allow the State to present evidence that the breath alcohol test results obtained by use of the Intoxilyzer Model 5000 Series 6600 were accurate and reliable.

¶ 4.  We conclude that under Wis. Admin. Code § TRANS 311.04(1), the chief of the chemical test section of the DOT is charged with approving all instruments used for the quantitative analysis of alcohol in the breath. We also conclude that under § TRANS 311.04(2) the chief of the chemical test section must evaluate all models of breath testing instruments, but is given the authority to determine the procedures for the evaluation of such instruments. In the present case, the circuit court received detailed testimony from the DOT that the Series 6600 had not been separately evaluated prior to approval because the modifications did not alter the analytical functioning of the Series 6600, and that the Series 6400 had been previously evaluated. Based upon this testimony, we conclude that the circuit court did not erroneously

exercise its discretion in finding that the Series 6400 and the Series 6600 were essentially the "same machine" due to their identical analytical processing. We further conclude that the DOT's interpretation that the method of testing of the Series 6600 had been previously evaluated and approved is consistent with Wis. Stat. § 343.305(6)(b) and § TRANS 311.04, the latter of which authorizes the chief of the chemical test section to determine the procedures for evaluation. Accordingly, Busch's breath alcohol test results obtained by utilization of the Intoxilyzer Model 5000 Series 6600 are afforded a presumption of accuracy and reliability, since a machine identical in analytical functioning has already been tested, evaluated, and approved for use in this state.

## A.

¶ 5. The facts are undisputed. On June 2, 1996, Busch was driving his motor vehicle and was stopped by a Trooper of the Wisconsin State Patrol. The stop resulted in Busch being cited with one count of operating a motor vehicle while under the influence of an intoxicant (first offense) contrary to Wis. Stat. § 346.63(1)(a) and one count of operation a motor vehicle with a prohibited alcohol concentration (first offense) contrary to Wis. Stat. § 346.63(1)(b). Busch was transported to the Sheboygan Falls Police Department, where he agreed to submit to a chemical test of his breath. The chemical test was conducted using the Intoxilyzer Model 5000 Series 6600, and the test results indicated that Busch's alcohol concentration was above the legally prohibited alcohol concentration set forth under Wis. Stat. § 340.01(46m).

¶ 6. On August 14, 1996, Busch filed a motion to suppress the chemical test results. He asserted that in

accord with Wis. Stat. § 343.305(6)(b), the DOT had promulgated Wis. Admin. Code § TRANS 311.04 to outline procedures for the evaluation and approval of breath alcohol test instruments, and that such evaluation and approval must occur prior to use of a breath testing instrument. Busch specifically referenced § TRANS 311.04(2)(a) which states that "[a]ll models of breath testing instruments and ancillary equipment used shall be evaluated by the chief of the chemical test section." He argued that the Intoxilyzer Model 5000 Series 6600 had not been evaluated for use by the chief of the chemical test section. The Series 6600 was a modified version of the Intoxilyzer Model 5000 Series 6400. Busch asserted that although the Series 6400 had previously been evaluated and approved, the Series 6600 had not.

¶ 7.    A motion hearing and court trial was held on August 28, 1996. At the hearing, the parties acknowledged that the substance of the motion to suppress had previously been heard and ruled upon by the circuit court in a factually similar case. *See State v. Baldwin*, 212 Wis. 2d 245, 569 N.W.2d 37 (Ct. App. 1997). The parties in the present case stipulated to the adoption of the testimony and arguments that the parties presented to the circuit court in *Baldwin*.[4]

¶ 8.    At the hearing on the motion to suppress in *Baldwin*, defense counsel called George Menart to testify. At the time, Menart had worked for approximately 13 years as a senior electronics technician for the Division of State Patrol, Chemical Testing, which is a part of the DOT. Menart testified that the State Patrol and

---

[4] The presiding circuit court judge in this case, Judge L. Edward Stengel, also presided in the *Baldwin* case, and defense counsel at the circuit court in this case was also defense counsel at the circuit court for Randall Baldwin.

the DOT set the standards for the breath testing program in Wisconsin, set forth the provisions in the administrative code that guide the program, set the standards for the testing of the breath test instruments and the training of persons operating the test instruments, provide all equipment for testing, and also provide the service and calibration of the testing instrumentation.

Menart stated that he had military and technical electronics training, was affiliated with the International Association of Chemical Testing, and held a professional certification with the DOT. Menart also testified that he had received extensive training on the theory, repair, and calibration of breath testing equipment from the manufacturer of the Intoxilyzer Model 5000. Finally, Menart testified that he had tested and evaluated the Intoxilyzer Model 5000 Series 6400 as part of the original approval procedures in 1983 or 1984.

¶ 9.   Menart testified that there were seven modifications made to the Series 6400, resulting in the Series 6600. First, additional circuitry was added to the processor board to set up an internal calibration system in the device. Menart stated that that this system is not used in Wisconsin. Second, the device used to heat the breath sample chamber was moved from an external mount underneath the sample chamber onto the mother board,[5] because the external mount had become obsolete. Third, the power supply had been replaced by a newer model because the model previously used had become obsolete. The power supply

---

[5] Menart defined the mother board as the system to which all the electronics are plugged in. "Essentially what it is is a means of getting data transferred back and forth between the different systems."

voltage remained identical. Fourth, diodes, capacitors, resistors, transistors, and chips on the mother board were obtained from a different manufacturer; however, all met the specifications required by the DOT. Fifth, the memory was upgraded from 16 kilobytes to 32 kilobytes. Sixth, a phone activated timer was added so that the State Patrol could download the information from individual machines state-wide to the main DOT files on a weekly basis. Seventh, a 10,000 ohm resistor was added to bleed the capacitor.

¶ 10.  Menart stated that the numerous changes in the Series 6600 did not affect the analytical functioning of the instrument, and that the method of analysis in the Series 6600 was identical to the method of analysis in the Series 6400. Menart acknowledged that the Series 6600 had never been separately tested and evaluated. However, it was the position of the DOT that the Series 6600 was essentially the same machine as the Series 6400.

> When we looked at equipment differences, especially from the perspective of how an instrument operates and how it does it's [sic] evaluation, what we look at is the optical bench, which entails the sample chamber, the lenses, the infrared source, the detector and, also, how that signals or multiple signals are then processed and in the case of the sixty-four and the 6600 series, the optical bench is identical. They're interchangeable. They haven't changed a bit. The specifications are the same; the processor board is the same; the way the analysis or the 3 wavelengths are done; the way the comparisons are done, ultimately, to create one signal, which is converted from analogue to digital.
>
> . . .

The integrated circuits are identical to what they were 10, 12 years ago. The capacitor values, the resistor values are, essentially, all the same. The manufacturers may have changed, but the components themselves are identical.

¶ 11. In ruling on the motion to suppress in *Baldwin*, the circuit court found that based upon the testimony of Menart, the two machines—Series 6400 and Series 6600—were identical with respect to the analytical process. The circuit court concluded that it was satisfied that the DOT had determined that no additional testing of the Series 6600 was necessary and, therefore, the DOT had met its responsibility under the administrative code. Accordingly, the circuit court accepted the Series 6600 as being appropriately tested and in full compliance with Wis. Stat. § 343.305(6)(b) and Wis. Admin. Code § TRANS 311.04.

¶ 12. Based upon the testimony presented in *Baldwin*, as incorporated by the parties in the present case, the circuit court denied Busch's motion to suppress the breath alcohol test results. Busch stipulated that there was probable cause for his arrest, and that he failed the field sobriety tests administered by the State Trooper on the date that he received the citations at issue. The circuit court found Busch guilty of both counts.

¶ 13. On September 13, 1996, the circuit court entered an Order of Judgment convicting Busch of operating a motor vehicle with a prohibited alcohol concentration contrary to Wis. Stat. § 346.63(1)(b). The circuit court dismissed the count of operating a motor vehicle while under the influence of an intoxicant con-

trary to § 346.63(1)(a) in accordance with § 346.63(1)(c).[6] Busch appealed.

¶ 14. The court of appeals reversed the judgment of the circuit court, concluding that the DOT had failed to comply with Wis. Admin. Code § TRANS 311.04. The court of appeals determined that pursuant to Wis. Stat. § 343.305(6)(b) and Wis. Admin. Code § TRANS 311.04, the DOT is required to test and certify breath test equipment prior to any use of the equipment in the state of Wisconsin. Absent testing and evaluation of a particular machine, the court of appeals reasoned, there is no certification that the instrument and its analysis are accurate and reliable. The court of appeals recognized that an administrative agency's interpretation and application of its own rules are afforded great weight. However, the court of appeals determined that the DOT's conclusion that the Series 6600 and the Series 6400 are the same machine did not meet the requirements of evaluation and approval under § TRANS 311.04. The court of appeals concluded that failure of the DOT to evaluate and approve the Series 6600, which contained seven major modifications from the previously tested Series 6400, stripped the machine of any presumption of accuracy. The court of appeals remanded the case to the circuit court to allow the State to present evidence that the Series 6600 breath alcohol test results of Busch's breath are accurate and reliable.

---

[6] Wisconsin Stat. § 346.63(1)(c) states in relevant part:

A person may be charged with and a prosecutor may proceed upon a complaint based upon a violation of par. (a) or (b) or both for acts arising out of the same incident or occurrence. . . . If the person is found guilty of both pars. (a) and (b), for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions. . . .

## B.

¶ 15. Busch's claim presents an issue of the interpretation and application of an administrative regulation, namely, Wis. Admin. Code § TRANS 311.04. Administrative rules promulgated pursuant to a power delegated by the legislature "should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason." *Law Enforcement Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 489, 305 N.W.2d 89 (1981). When interpreting an administrative regulation, we generally use the same rules of construction and interpretation as applicable to statutes. *See id.*

¶ 16. An issue of statutory interpretation is one which we review de novo, benefiting from the analyses of the circuit court and the court of appeals. *See Carlson & Erickson Builders v. Lampert Yards*, 190 Wis. 2d 650, 658, 529 N.W.2d 905 (1995). However, "[a]n administrative construction of the agency's own regulations is controlling in determining their meaning unless plainly erroneous or inconsistent with the regulations." *Lyndon Station*, 101 Wis. 2d at 490. *See also State ex rel. Durando v. State Athletic Comm'n*, 272 Wis. 191, 195, 75 N.W.2d 451 (1956) ("[A]n administrative [agency's] interpretation of its own rules. . .should be accorded great weight by the courts 'unless it is plainly erroneous or inconsistent' with the regulations." (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). In addition, we will not reverse any findings of fact made by the circuit court unless they are clearly erroneous. *See State v. Smith*, 207 Wis. 2d 258, 266, 558 N.W.2d 379 (1997).

¶ 17. The Wisconsin Legislature has delegated to the DOT the authority and responsibility of evaluating and approving the instrumentation used to administer chemical breath alcohol tests. Wisconsin Stat. § 343.305(6)(b) states in relevant part:

> The department of transportation shall approve techniques or methods of performing chemical analysis of the breath and shall:
>
> . . .
>
> 3. Have trained technicians, approved by the secretary, test and certify the accuracy of the equipment to be used by law enforcement officers for chemical analysis of a person's breath. . .before regular use of the equipment and periodically thereafter at intervals of not more than 120 days;

¶ 18. In accordance with Wis. Stat. § 343.305(6)(b), the DOT promulgated guidelines in the administrative code for the administration of the breath alcohol testing program. Wisconsin Admin. Code § TRANS 311 states in relevant part:

> **Trans 311.01   Purpose.** The purpose of this chapter is to aid the department of transportation in the administration of the breath alcohol testing, approval and permit program as directed and authorized by s. 343.305(6)(b), Stats.
>
> . . .
>
> **Trans 311.04   Approval of breath alcohol test instruments. (1)** Only instruments and ancillary equipment approved by the chief of the chemical test section may be used for the qualitative or quantitative analysis of alcohol in the breath;
>
> **(2)(a)** All models of breath testing instruments and ancillary equipment used shall be evaluated by the chief of the chemical test section.

(b) The procedures for evaluation shall be determined by the chief of the chemical test section.

**(3)** Each type or category of instrument shall be approved by the chief of the chemical test section prior to use in this state.

Note: The following quantitative breath alcohol test instruments are approved for use in Wisconsin:

Intoxilyzer Model 5000

Intoxilyzer Model 1400

Intoxilyzer 5000 Model 000568

¶ 19. In *In re Suspension of Operating Privilege of Bardwell*, 83 Wis. 2d 891, 900, 266 N.W.2d 618 (1978), this court held that "[a] chemical test specified by a statute may not be deemed unreliable as a matter of law." Thus, a "recognized method[ ] of testing authorized by statute [is] entitled to a prima facie presumption of accuracy." *State v. Disch*, 119 Wis. 2d 461, 475, 351 N.W.2d 492 (1984). Accordingly, if a breath alcohol instrument's "method[ ] of testing" has been recognized as accurate and complies with the specifications of Wis. Stat. § 343.305(6)(b) and Wis. Admin. Code § TRANS 311.04, it is afforded a presumption that its test results are accurate and reliable. *See id.*

¶ 20. Wisconsin Admin. Code § TRANS 311.04(1) states that the chief of the chemical test section of the DOT must approve any equipment used in administering a quantitative breath alcohol test. Section TRANS 311.04(2)(a) further states that, as part of the DOT's approval of the breath testing equipment, all

models of equipment must be evaluated.[7] However, § TRANS 311.04(2)(b) expressly states that the "procedures for evaluat[ing]" a given breath alcohol test instrument "shall be determined by the chief of the chemical test section" of the DOT.

¶ 21.   Notwithstanding the DOT's authority, we recognize that "[a] scientific or medical method not recognized as acceptable in the scientific or medical discipline as accurate does not enjoy the presumption of accuracy." *State v. Trailer Serv., Inc.*, 61 Wis. 2d 400, 408, 212 N.W.2d 683 (1973). However, where the method of testing has been recognized as accurate and reliable, the particular test instrument "need not be proved for reliability in every case." *Id.*

¶ 22.   In the present case, the DOT's determination that the Series 6600 method of breath alcohol testing did not require further evaluation prior to approval was not "plainly erroneous or inconsistent with the regulations," either in its language or its purpose. *See Lyndon Station*, 101 Wis. 2d at 490. In addition, the DOT's interpretation and application of Wis. Admin. Code § TRANS 311.04 are consistent with this court's decisions which state that a scientific method of testing may be afforded a presumption of accuracy if it has been recognized as an acceptable method of testing. *See, e.g., Trailer*, 61 Wis. 2d at 407–08.

---

[7] Busch argues that the language of Wis. Admin. Code § TRANS 311.04 is mandatory. We accept this argument and decline to engage in a lengthy discussion regarding whether the language is mandatory or directory. The State does not dispute that the DOT "shall" evaluate and approve breath alcohol testing instruments; rather, the State asserts that the Intoxilyzer Model 5000 Series 6600 was evaluated and approved consistent with § TRANS 311.04 and Wis. Stat. § 343.305(6)(b).

¶ 23.   As indicated, Wis. Admin. Code § TRANS 311.04 states that the DOT is required to evaluate all breath test instrument models; however, the method of evaluation is left to the determination of the DOT. Section TRANS 311.04(1) states that the purpose of the regulation is, in part, to aid the DOT in approving the breath alcohol testing program in Wisconsin consistent with Wis. Stat. § 343.305. The purpose of the implied consent law set forth in § 343.305[8] is to keep the highways safe for the public, which includes "obtain[ing] the blood alcohol content in order to obtain evidence to prosecute drunk drivers." *State v. Nordness*, 128 Wis. 2d 15, 33, 381 N.W.2d 300 (1986). Although not expressly stated in § 343.305, it is reasonable to infer that the Wisconsin Legislature intended any breath alcohol testing equipment to be accurate and reliable, and the DOT's regulations expressly state that any instrumentation must be evaluated and approved.

¶ 24.   In the present case, Menart testified on behalf of the DOT that the analytical process, that is, the method of breath testing, of the Series 6600 had been approved because a machine identical in analytical functioning had been tested, evaluated, and approved as to accuracy and reliability for use in the state. The DOT's determination of the "procedure for evaluation" of the Series 6600 in accord with Wis. Admin. Code § TRANS 311.04(2) was to consider the modifications made, to consider whether the method of analysis had been altered or affected, and to ultimately

---

[8] Wisconsin Stat. § 343.305 is known as the implied consent law because it "states that any person who drives or operates a motor vehicle upon the public highways of this state is deemed to have given his consent for chemical testing when requested to do so by a law enforcement officer." *State v. Nordness*, 128 Wis. 2d 15, 24–25, 381 N.W.2d 300 (1986).

conclude that the particular method of analysis utilized by the Series 6600 had already been evaluated and approved in the Series 6400.

¶ 25. In reviewing the DOT's interpretation of Wis. Admin. Code § TRANS 311.04, the circuit court did not erroneously exercise its discretion in concluding that the Series 6400 and the Series 6600 were analytically the "same machine." The circuit court heard testimony from Menart as a trained, experienced representative of the DOT who participated in evaluating, approving, and servicing instruments used for breath alcohol testing in the state of Wisconsin. Menart testified to several modifications made to the Series 6400 which resulted in the Series 6600. Menart addressed each of these changes, stating that none had any effect on the analytical processing or the method of breath testing of the machine. He testified that the DOT carefully evaluated the Series 6600 machine and determined that repetitive testing of an analytical process identical to the Series 6400 was not necessary. Thus, the finding by the circuit court that the Series 6600 was essentially the same machine as the Series 6400 was not an erroneous exercise of the circuit court's discretion.

¶ 26. The DOT's interpretation and application of its own regulation are consistent with Wis. Admin. Code § TRANS 311.04 and Wis. Stat. § 343.305(6)(b). It is also consistent with this court's decisions stating that a "recognized method of testing authorized by statute" is afforded a prima facie presumption of accuracy. *Disch*, 119 Wis. 2d at 475. Thus, the DOT's interpretation of § TRANS 311.04 is not "plainly erroneous or inconsistent with the regulations." *Lyndon*

*Station*, 101 Wis. 2d at 490. Accordingly, the DOT's construction of its own regulation is controlling. *See id.*[9]

¶ 27.    The failure of the DOT to add the "Intoxilyzer Model 5000 Series 6600" to the note following Wis. Admin. Code § TRANS 311.04, which sets forth the instruments that are approved for use, does not alter our analysis. First, the note states that the Intoxilyzer Model 5000 is approved for use in the state without designating any series number, including the Series 6400 which has been evaluated and approved by the DOT. Since it is the position of the DOT that the Series 6400 and the Series 6600 are the "same machine," it is understandable why the DOT did not amend the note to specifically designate that the Series 6400 and the Series 6600 were separately evaluated and approved for use. We recognize that the Intoxilyzer 5000 Model 000568 was specifically added to the note list; however, Menart testified before the circuit court that the Model 000568 and the Series 6400 are as "different as night and day."

¶ 28.    Second, although the note is helpful in interpreting and applying Wis. Admin. Code § TRANS 311.04, it is only one factor for us to consider in our analysis. In this case, we also have the benefit of the administrative agency's interpretation of § TRANS 311.04, which is consistent with the regulation and the

---

[9] Our holding is in no way premised upon the distinction that the manufacturer of the 6600 machine designated it as a "series" and Wis. Admin. Code § TRANS 311.04 requires that the chief of the chemical test section of the DOT need only approve equipment "models." Such a distinction would place too great authority in the hands of the various equipment manufacturers in designating a particular machine as a "series" or a "model."

enabling statute, Wis. Stat. § 343.305(6)(b). Examining the content of the note in conjunction with the DOT's interpretation of the regulation, we are convinced that the DOT's construction of § TRANS 311.04 is controlling.

## C.

¶ 29. In sum, we conclude that under Wis. Admin. Code § TRANS 311.04, the chief of the chemical test section of the DOT is charged with evaluating and approving all instruments used for the quantitative analysis of alcohol in the breath. We also conclude that the chief of the chemical test section is given the authority to determine the procedures for the evaluation of such instruments. Based upon the detailed testimony presented by the DOT to the circuit court, we conclude that the circuit court did not erroneously exercise its discretion in finding that the Series 6400 and the Series 6600 were essentially the "same machine" due to their identical analytical processing. We further conclude that the DOT's interpretation that the method of testing of the Series 6600 had been previously evaluated and approved is consistent with Wis. Stat. § 343.305(6)(b) and § TRANS 311.04. Accordingly, Busch's breath alcohol test results obtained by utilization of the Intoxilyzer Model 5000 Series 6600 are afforded a presumption of accuracy and reliability.

*By the Court.*—The decision of the court of appeals is reversed.