STATE of Wisconsin EX REL. James A. MENTEK, Jr., Petitioner-Appellant,†

v.

David H. SCHWARZ, Administrator Division of Hearings and Appeals, Respondent-Respondent.

Court of Appeals

*No. 99–0182. Submitted on briefs September 23, 1999.—Decided April 19, 2000.*

## 2000 WI App 96

(Also reported in 612 N.W.2d 746.)

†Petition to review granted.

143

144

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James A. Mentek, Jr.*, pro se.

On behalf of the respondent-respondent, the cause was submitted on the brief of *William C. Wolford*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. James A. Mentek, Jr. appeals pro se from a circuit court order dismissing his petition for writ of certiorari because he failed to exhaust his administrative remedies prior to filing the petition. He

145

contends that he was denied effective assistance of counsel when his attorney decided not to seek an administrative appeal of his probation revocation despite his request to do so. Mentek further contends that the circuit court judge who dismissed the petition lacked the authority to hear the petition because Mentek had filed a motion for substitution that was ignored.

¶ 2. We conclude that Mentek's ineffective assistance of counsel claim must fail because neither state nor federal constitutional law recognizes a right to effective assistance of counsel on an appeal of a probation revocation. In addition, we are not persuaded that such a right has been established by the Division of Hearings and Appeals. We decline to create such a right in this case. As to Mentek's request for judicial substitution, we conclude that his claim is rendered moot because he does not have a cause of action before the certiorari court. Thus, we affirm the circuit court's order.

## BACKGROUND

¶ 3. The essential facts are undisputed. Mentek was convicted in Kenosha county of one count of uttering a forged check and sentenced to prison for ten years on May 12, 1993. The sentence was stayed and Mentek was placed on ten years of probation. On May 28, 1993, he was convicted of one count of issuing worthless checks and sentenced to a stayed prison term of two years and placed on three years of probation. Judge Mary K. Wagner-Malloy presided over Mentek's criminal convictions.

¶ 4. Mentek's probation was contingent upon his reporting to his probation officer and attending substance abuse counseling sessions. When Mentek was

arrested in another state six months after failing to attend counseling sessions and failing to report to his probation officer, the State sought revocation of his probation. Revocation hearings were held on October 1, 1997, and February 23, 1998, before an administrative law judge (ALJ). At the February 23 final revocation hearing, Mentek was represented by an appointed state public defender.[1] On March 6, 1998, the ALJ revoked Mentek's probation.

¶ 5. On March 25, 1998, the public defender sent Mentek a letter stating that an appeal of the March 6, 1998 revocation decision had no merit. The public defender submitted several reasons for not pursuing an appeal and concluded by stating, "Failure to file an administrative appeal does not bar you from filing a Writ of Certiorari in the circuit court in which you were convicted."

¶ 6. On August 24, 1998, Mentek filed a petition for writ of certiorari raising a number of points of error involving administrative and procedural defects prior to and during the revocation proceedings. He also claimed that his due process rights had been violated, including his right to effective assistance of counsel.

¶ 7. On August 24, Mentek also filed a motion for "an order changing venue from Judge [Wagner-Malloy]." He asserted that Judge Wagner-Malloy could not be fair and impartial to his case because she had previously handled aspects of his sentencing about which he was displeased. In response to his motion, Mentek received a request form for substitution of judge. Mentek completed the form and filed it on or about August 26, 1998. He restated his concern that Judge Wagner-Malloy was biased against him.

---

[1] Mentek's previously appointed counsel resigned in December 1997.

¶ 8. In October 1998, the State moved to summarily dismiss Mentek's writ of certiorari on the ground that he failed to exhaust his administrative remedies as required by WIS. STAT. § 801.02(7) (1995–96)[2] because he failed to appeal the hearing examiner's revocation decision. On November 10, 1998, Judge Wagner-Malloy ruled in the State's favor, thereby dismissing Mentek's request for certiorari review.

## DISCUSSION

### A. Ineffective Assistance of Counsel

¶ 9. On appeal, Mentek does not dispute the statutory requirement that "any administrative remedies" must be exhausted before a petition for writ of certiorari can be heard in civil court. *See id.* Instead, he raises an ineffective assistance of counsel argument.

¶ 10. Mentek asserts that following his final revocation hearing on February 23, he made it clear to his public defender that he wanted to challenge the "countless procedural errors" that were committed prior to and during the hearings. Mentek claims that the public defender indicated that he would file an administrative appeal and that he would contact Mentek when the appeal was completed. Pursuant to WIS. ADMIN. CODE § HA 2.05(8)(a), Mentek had ten days in which to file an administrative appeal of the Division of Hearings and

---

[2] WISCONSIN STAT. § 801.02(7) (1995–96) provides that "[n]o prisoner . . . may commence a civil action . . . until the person has exhausted any administrative remedies that the department of corrections has promulgated by rule." Section 801.02(7) was amended effective September 1, 1998, shortly after Mentek filed his petition for writ of certiorari. *See* 1997 Wis. Act 133, §§ 11, 44(1). All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

Appeals' March 6, 1998 decision.[3] Instead of seeking an appeal, however, the public defender provided Mentek a letter explaining why an appeal was meritless.[4] The letter was dated March 25, 1998, almost three weeks following the March 6 decision and five days after the deadline for Mentek's administrative appeal. The public defender concluded his letter by advising Mentek that he would not need to file an administrative appeal in order to pursue a writ of certiorari before the circuit court.

¶ 11. Mentek contends that his due process right to effective assistance of counsel was violated because the public defender's failure to pursue an administrative appeal precluded him from seeking judicial review through a petition for writ of certiorari. We conclude that Mentek's contention must fail because Wisconsin and federal constitutional law do not recognize a right to appointed counsel, nor by extension a right to effective assistance of counsel, on an administrative appeal of a probation revocation decision.

¶ 12. Whether Mentek has a due process right to effective assistance of counsel is a question of law we review de novo. *Cf. State v. Pultz*, 206 Wis. 2d 112, 119, 556 N.W.2d 708 (1996). Every criminal defendant in Wisconsin has a constitutional right to the effective assistance of counsel under the Sixth Amendment, *see*

---

[3] At the time the Division of Hearings and Appeals issued its decision, it sent Mentek a letter indicating that the decision would "take effect and be final 10 working days after the date it was issued unless an administrative appeal is filed under sec. HA 2.05(8), Wis. Admin. Code."

[4] While Mentek states that the public defender sent him a "no merit report," the record does not contain one and WIS. STAT. RULE 809.32 (1997–98) does not prescribe one in the context of an administrative appeal of a probation revocation.

149

*Strickland v. Washington*, 466 U.S. 668, 686 (1984), and under article I, section 7 of the Wisconsin Constitution, *see State v. Sanchez*, 201 Wis. 2d 219, 226–36, 548 N.W.2d 69 (1996). That right applies to a criminal defendant's trial proceedings, *see Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963), and to the first appeal as of right, *see Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

¶ 13. Probation and parole proceedings, however, are not subject to the same constitutional protections as criminal proceedings. The reason for this is that probation revocation is a civil proceeding, not a stage of a criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 502, 513, 563 N.W.2d 883 (1997). Fundamental differences between criminal trials and probation revocation proceedings justify their different constitutional treatment:

> In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer . . .; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole.

*Gagnon*, 411 U.S. at 789. These differences entail that a probationer is "not entitled to the full panoply of rights accorded persons subject to criminal process."

*Vanderbeke*, 210 Wis. 2d at 513. Nonetheless, courts recognize that probation revocation "deprives an individual, not of the absolute liberty to which every citizen is entitled, but . . . of the conditional liberty properly dependent on observance of special [probation] restrictions." *Gagnon*, 411 U.S. at 781 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)); *see Vanderbeke*, 210 Wis. 2d at 514. As a probationer's interest in personal liberty increases, so does his or her right to due process. *Cf. Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 26 (1981).

¶ 14. In *Gagnon*, the United States Supreme Court ruled that a probationer is constitutionally entitled to two hearings: the first, a preliminary hearing at the time the probationer is detained due to an alleged probation rule violation; the second, a more comprehensive hearing before the final probation revocation decision is issued. *See Gagnon*, 411 U.S. at 781–82. Revocation proceedings must include written notice of the claimed violations, disclosure of the evidence against the probationer, an opportunity to be heard, the right to confront and cross-examine adverse witnesses, a "neutral and detached" hearing body, and a written statement by the fact finder regarding evidence relied upon and reasons for revoking probation. *See id.* at 786 (citing *Morrissey*, 408 U.S. at 489).[5] What is not constitutionally mandated is an unqualified right to appointed counsel. The Court held, instead,

---

[5] The Supreme Court's holding in *Gagnon* is an extension of *Morrissey v. Brewer*, 408 U.S. 471, 484–90 (1972), which determined that a person subject to parole revocation should be afforded a hearing before a neutral and detached hearing officer at both the preliminary hearing and the final revocation hearing.

that appointment of counsel should be provided on a case-by-case basis where the state probation and parole authority determines in its own discretion that a probationer is in need of counsel. *See id.* at 790; *see also State ex rel. Cresci v. DHSS*, 62 Wis. 2d 400, 413, 215 N.W.2d 361 (1974) (adopting *Gagnon*'s case-by-case approach). Where a probationer is found to be in need of counsel consistent with *Gagnon*, due process requires that counsel be effective. *See A.S. v. State*, 168 Wis. 2d 995, 1003, 485 N.W.2d 52 (1992) ("It is axiomatic that the right to be represented by appointed counsel is worthless unless that right includes the right to *effective* counsel.").

¶ 15. Mentek contends that under *Gagnon*, "counsel is required for fundamental fairness in parole revocation hearings." Mentek's reading of *Gagnon*—that counsel is *required*—overstates the law. *Gagnon* held that there is

> no justification for a new inflexible constitutional rule with respect to the requirement of counsel. . . . Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness . . . will require that the State provide at its expense counsel for indigent probationers or parolees.

*Gagnon*, 411 U.S. at 790. *Gagnon* established a conditional right to appointed counsel, which is only triggered under certain circumstances, such as when a probationer has made a "timely and colorable claim" that he or she has not violated probation conditions or that he or she has "substantial reasons" justifying the violation. *See id.* at 790. Thus, we reject Mentek's pre-

mise that the law contains a per se requirement that counsel be appointed for probation and parole revocation proceedings.

¶ 16. Mentek continues his argument, claiming that *Gagnon*'s "right to counsel" at the revocation hearing stage extends to the administrative appeals stage. Citing *Evitts*, he argues that he is guaranteed effective assistance of counsel on his first appeal as of right, including the appeal of a revocation decision. We are unconvinced. First, *Evitts* does not control here because *Evitts* involved a direct appeal of a criminal conviction and, as *Gagnon* instructs, criminal and civil proceedings are to be treated differently for purposes of due process.

■

¶ 17. Second, in *State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 253, 548 N.W.2d 45 (1996), our supreme court determined that "[w]here a statutory right to counsel exists, we have held that the right includes the right to effective counsel." Here, Wisconsin administrative law does provide for the right to assistance of counsel for final revocation hearings. *See* WIS. ADMIN. CODE § HA 2.05(3)(f) ("The client's rights at the [revocation] hearing include: The right to the assistance of counsel."). But there is no provision establishing a concomitant right to counsel on administrative appeal. We decline to establish such a right in this case.[6]

---

[6] The dissent concludes that the language in WIS. ADMIN. CODE § HA 2.05(3) is ambiguous as to whether "[t]he client's rights at the hearing" include a mandated constitutional or statutory right to assistance of counsel on an appeal from an administrative revocation. To resolve the ambiguity, the dissent relies upon WIS. ADMIN. CODE § HA 2.05(8), entitled "APPEAL," which states that "[t]he client, *the client's attorney, if any,* or the

¶ 18. In sum, constitutional due process recognizes only a conditional guarantee of appointed counsel during probation revocation hearings, determined on a case-by-case basis. On administrative appeal, a probationer may be assisted by counsel, but there is no due process right or conditional right to appointed counsel or effective assistance of counsel. Appointed counsel for the probation revocation stage does not have a constitutional duty to ensure that the probationer's administrative appeal is filed on time and in proper form. This obligation falls to the probationer.

¶ 19. In the present case, when the Division of Hearings and Appeals issued its revocation decision, it included notice to Mentek that he had ten days to file an administrative appeal. Because Mentek did not file a timely appeal, no appeal was recorded and thus his administrative remedies were not exhausted pursuant to WIS. STAT. § 801.02(7). As such, the circuit court's dismissal of his petition for certiorari review was appropriate.[7]

department representative may appeal the administrative law judge's decision." Section HA 2.05(8)(a) (emphasis added). We fail to see how the resolve of this perceived ambiguity creates a constitutional or statutory right to counsel. At best, the code defines who may file an appeal and permits an attorney, if the client has one, to file an appeal on the client's behalf. We are satisfied that this court cannot establish such a statutory or constitutional right where such right has not been affirmatively established by the proper authority. *See State v. Engler*, 80 Wis. 2d 402, 410, 259 N.W.2d 97 (1977) ("[W]e are obliged to apply the law as it is written, not as it might well have been written, or as it might some day be rewritten by the legislature.").

[7] While the majority disagrees with the dissent's analysis of the administrative rule, we agree with the dissent that a prob-

## B. Request for Substitution of Judge

¶ 20.　Next, Mentek contends that Judge Wagner-Malloy did not have jurisdiction to hear his petition for writ of certiorari after he filed a request for substitution of judge. Mentek cites WIS. STAT. § 801.58(2) (1997–98), which provides for the substitution of a judge where a request is timely and in proper form. If the request is properly submitted, "the judge named in the request has no further jurisdiction and the clerk shall request the assignment of another judge under s. 751.03." Section 801.58(2).

¶ 21.　As the State points out, the appellate record is somewhat confusing as to Mentek's request for substitution. On August 24, 1998, Mentek submitted a motion for change of venue asking to have his petition for writ of certiorari transferred out of Judge Wagner-Malloy's court. According to Mentek, in response to his motion, he received a request form for substitution of judge. Mentek submitted his request on or about August 26, 1998.[8] He stated that he did not want his writ of certiorari heard before Judge Wagner-Malloy because she was "not only biased and prejudiced against Petitioner, but also retaliatory, and will do whatever is necessary to prevent her sentence from being overturned." Both his motion to change venue and his request for substitution of judge contained the case number 98–IP–14, although the case

lem exists if an attorney promises to file an appeal and then fails to act on that promise in some meaningful way. We differ from the dissent only as to whether this court has the authority to fashion a remedy. Indeed, we believe this issue should be visited by the supreme court, which does have the authority to fashion a remedy.

[8] Mentek's request for substitution was dated August 26, 1998, but was not date-stamped by the court clerk.

number assigned to his petition for writ of certiorari was 98–CV–962.

¶ 22. Mentek asserts that after filing his request, his case was assigned to Judge S. Michael Wilk. Mentek points out that Judge Wilk's name is stamped on Mentek's petition for writ of certiorari, his motion for reversal of decision, and the circuit court's writ of certiorari. As Mentek notes, however, Judge Wagner-Malloy signed the writ of certiorari, conducted the November 10, 1998 hearing on the State's motion to dismiss, and signed the order dismissing Mentek's petition. Our review of the record indicates that apart from Judge Wilk's stamp on several documents, there is no document evidencing a judicial substitution; there is also no explanation for why Judge Wagner-Malloy continued to hear the case. The record does not show that a judge reviewed Mentek's request for substitution or made a determination as to timeliness or proper form. *See State ex rel. Oman v. Hunkins*, 120 Wis. 2d 86, 88, 352 N.W.2d 220 (Ct. App. 1984) ("If the judge finds the request timely and proper, the clerk shall request reassignment.").

¶ 23. Regardless of whether Mentek's case was in fact reassigned, we conclude that his substitution claim is moot because he does not have a viable ineffective assistance of counsel claim as a matter of law. A matter is moot if a determination is sought that cannot have a practical effect on an existing controversy. *See City of Racine v. J-T Enters., Inc.*, 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974). Mentek failed to exhaust his administrative remedies before seeking certiorari relief and there is no right to statutory or constitutional assistance of counsel on an appeal of a final probation revocation decision. Substituting another

branch of the Kenosha County Circuit Court would not have made a difference to Mentek's claim for relief or to the result he obtained.

¶ 24. Thus, we affirm the circuit court's order dismissing Mentek's petition for writ of certiorari.

*By the Court.*—Order affirmed.

¶ 25. BROWN, P.J. *(dissenting)*. I respectfully dissent. At paragraph 17 of the majority opinion, the following statement is made:

> Wisconsin administrative law does provide for the right to assistance of counsel for final revocation hearings. *See* WIS. ADMIN. CODE § HA 2.05(3)(f) ("The client's rights at the [revocation] hearing include: The right to the assistance of counsel."). But there is no provision establishing a concomitant right to counsel on administrative appeal. We decline to establish such a right in this case.

For the reasons that follow, I believe the above statement is wrong. I construe WIS. ADMIN. CODE § HA 2.05 as granting the right to effective assistance of counsel at both the revocation hearing and on the administrative appeal.

¶ 26. First, I think it is necessary to cite the standard of review regarding construction of administrative rules. "When interpreting an administrative regulation, we generally use the same rules of construction and interpretation as applicable to statutes." *State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998). An administrative rule "is ambiguous if reasonable minds could differ as to its meaning." *State v. Corey J.G.*, 215 Wis. 2d 395, 411, 572 N.W.2d 845 (1998) (citation omitted). To resolve the ambiguity of a rule, "this court must look beyond the [rule]'s language

and examine the scope, history, context, subject matter, and purpose of the [rule]." *Beard v. Lee Enters., Inc.*, 225 Wis. 2d 1, 10, 591 N.W.2d 156 (1999). Ambiguous rules should be interpreted to effect legislative intent. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625 (1991).

¶ 27. Although the majority does not say so, it apparently is of the opinion that WIS. ADMIN. CODE § HA 2.05(3) must be construed as to allow for counsel only at the hearing stage, not at the administrative appeal stage as well. I am satisfied, however, that § HA 2.05(3) is ambiguous because reasonable minds could differ regarding how it should be interpreted. Section HA 2.05(3) reads as follows:

CLIENT'S RIGHTS. The client's rights at the hearing include:

(a) The right to be present;

(b) The right to deny the allegation;

(c) The right to be heard and to present witnesses;

(d) The right to present documentary evidence;

(e) The right to question witnesses;

(f) The right to the assistance of counsel;

(g) The right to waive the hearing;

(h) The right to receive a written decision stating the reasons for it based upon the evidence presented; and

(i) The right to appeal the decision in accordance with sub. (8).

¶ 28. One reasonable interpretation of WIS. ADMIN. CODE § HA 2.05(3) is the interpretation made by the majority that the right to effective assistance of

158

counsel only applies during the hearing. That section, entitled "Client's rights," begins by stating, "The client's rights at the *hearing* include." *Id.* (emphasis added). After this introductory phrase, nine rights are listed, including the right to assistance of counsel. Consequently, one reasonable view of § HA 2.05(3) is that the right to assistance of counsel only applies at the hearing because this right is only enumerated in § HA 2.05(3) and the introductory language of the section arguably indicates that the enumerated rights only apply at the hearing.

¶ 29. However, another reasonable interpretation of WIS. ADMIN. CODE § HA 2.05(3) is that the right to assistance of counsel applies at the hearing and on the appeal. Despite the fact that the introductory language of § HA 2.05(3) speaks of rights at the *hearing*, the rights actually enumerated in § HA 2.05(3) include prehearing rights, rights at the hearing and posthearing rights. For example, the right to waive the hearing is a prehearing right. The right to be present, to be heard, to deny allegations, to present witnesses and documentary evidence, and to question witnesses are rights at the hearing. The right to receive a written decision and appeal that decision are posthearing rights. Thus, the § HA 2.05(3) list includes more than just rights at the hearing itself.

¶ 30. The remaining right, the right to effective assistance of counsel, is not inherently a prehearing right, a hearing right or a posthearing right. Considering that some of the rights enumerated in WIS. ADMIN. CODE § HA 2.05(3) apply at prehearing and posthearing stages of the revocation proceedings, the introductory language of § HA 2.05(3) does not clearly indicate that the right to assistance of counsel is limited to the hearing itself. Thus, § HA 2.05(3) can be reasonably

interpreted to guarantee the right to assistance of counsel on the posthearing appeal.

¶ 31. To resolve the ambiguity of WIS. ADMIN. CODE § HA 2.05(3), I move to § HA 2.05(8). Section HA 2.05(8) reads as follows:

> APPEAL. (a) The client, the client's attorney, if any, or the department representative may appeal the administrative law judge's decision by filing a written appeal with arguments and supporting materials, if any, with the administrator within 10 days of the date of the administrative law judge's written decision.
>
> (b) The appellant shall submit a copy of the appeal to the other party who has 7 days to respond.

¶ 32. The introductory language to that section, which discusses the right to administrative review and establishes the procedure for review, clearly says that the "client, *the client's attorney*, if any, or the department representative may appeal the administrative law judge's decision." WIS. ADMIN. CODE § HA 2.05(8)(a) (emphasis added). I look at this language as evidence that the code drafters intended for the client to have the right to counsel at both the hearing and administrative appeal stages. In my view, this language clarifies the seemingly ambiguous language in § HA 2.05(3). Reading the two sections in pari materia, I would hold that a client's right to counsel continues through the administrative review process.

¶ 33. It makes sense that the code drafters would provide a broader right to counsel than my colleagues believe. It goes almost without saying that the client's liberty interest is at stake. If probation is revoked, the client goes to prison. *See State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 502, 513–14, 563 N.W.2d 883

(1997). At the time the present code was drafted, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), was on the books. The code drafters had to know that they did not have to give a right to counsel in all revocation hearings to begin with. They could have granted only the minimum right to assistance of counsel during probation revocation proceedings as required by *Gagnon*, which is the right to counsel at the hearing only on a case-by-case basis. *See id.* at 790. But the fact that the code drafters saw fit to grant a right to counsel at every revocation hearing shows that the drafters went beyond what was necessary under the law for a reason. That reason was to make certain that before a person's liberty interest is curtailed, he or she should have the right to competent assistance.

¶ 34. I cannot believe that, after giving the client a broader right than the law demands, the code drafters then arbitrarily decided that assistance of counsel was somehow less important at the administrative appeal stage. Appellate advocacy is just as important as trial advocacy. And time is of the essence. Only ten days are allotted to appeal the administrative law judge's decision to the administrator. I cannot believe that the drafters would have intended that, during the critical ten-day period, the client would be left to his or her own devices in "filing a written appeal with arguments and supporting materials, if any." WIS. ADMIN. CODE § HA 2.05(8)(a). That simply makes no sense. I am convinced that the drafters meant to allow counsel at both stages, and I am convinced that the language in § HA 2.05(3) and (8), read together, says so. The majority claims that I am "creating" a right where none exists. The majority is mistaken. I am creating nothing. I am simply interpreting the code provision in the manner consistent with our canons of statutory inter-

pretation and coming to the conclusion that I believe the drafters intended.

¶ 35. Even if I am wrong and Mentek only had the right to effective assistance of counsel during the revocation hearing, I would still hold for Mentek. Assuming, as I must at this stage, that Mentek's version of the facts of this case is true, Mentek received ineffective assistance of counsel from his attorney. According to Mentek, his attorney promised to represent Mentek on appeal and failed to do so without telling Mentek until it was too late for Mentek to file the appeal pro se.

¶ 36. If Mentek's version of the facts is true, then Mentek's attorney violated Supreme Court Rule 20:1.3 (2000), which requires lawyers to act with diligence when representing a client.[1] A portion of the comments related to SCR 20:1.3 indicates that after receiving an adverse result from a judicial or administrative proceeding, diligence requires informing the client of continued representation or a prompt withdrawal in writing.[2] Without proper withdrawal, a client may reasonably assume representation is continuing. In this

---

[1] Supreme Court Rule 20:1.3 (2000) states: "**Diligence** A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] Part of the Comment to SCR 20:1.3 states:

> Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client . . . . Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter.

case, Mentek's attorney allegedly failed to act with diligence. According to Mentek, rather than promptly declaring his representation at an end after the hearing, Mentek's attorney promised to continue representation but failed to do so. When Mentek's attorney finally withdrew, the deadline to appeal had passed and Mentek's appellate rights were forfeited through no fault of his own.

¶ 37. While there is no law holding that a violation of a Supreme Court Rule is ineffective assistance of counsel per se, I would hold that, if Mentek's allegations are true, then his attorney's conduct produced such a prejudicial result for Mentek that there was ineffective assistance of counsel in this case, as a matter of law. Even if Mentek had no right to representation on appeal, justice requires that Mentek had a right to at least be told by his attorney that the attorney could no longer represent him. And even if Mentek had no right to an attorney for the appeal process, he did have a right to rely on his attorney when the attorney promised he would file an appeal.

¶ 38. I am concerned that the majority's opinion can be cited for the proposition that an attorney may blatantly misrepresent the law or the facts or both to a revoked client regarding the services that the attorney promises to perform and, when the client relies on the attorney's word, the client suffers the consequences—simply because the hearing was over with when the attorney made these representations. In this case, the consequences were severe; Mentek was denied an opportunity to protect his liberty interest by appealing and was sent to prison.

¶ 39. I take solace in the fact that the United States Supreme Court recently touched on this subject in *Roe v. Flores-Ortega*, 120 S. Ct. 1029 (2000). I recog-

163

nize that the case did not involve a revocation proceeding. But I think the language of the Supreme Court decision is relevant to my analysis. There, the Ninth Circuit Court of Appeals had held that, following a guilty plea and sentence, counsel must file a notice of appeal unless the defendant specifically instructs otherwise; failing to file is per se deficient. The Supreme Court disagreed. The majority wrote: "We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable . . . ." *Id.* at 1036. But the Court did say that an attorney has a constitutionally imposed duty to consult with a defendant about an appeal in two situations: when there is reason to think that a rational defendant would want to appeal because there is a nonfrivolous issue and when "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* The Court ended the discussion by writing that this will be the case in a vast majority of cases.

¶ 40. I believe that the United States Supreme Court was sending a message and that message is that if a person wants to appeal, and that person conveys that interest to his or her attorney, the attorney has a duty to either file the appeal or explain why he or she cannot or will not do so. A client cannot be held to have waived the right to appeal by relying to his or her detriment on a lawyer's promise to appeal when the lawyer then fails to live up to that promise. If the phrase "effective counsel" means anything, it means that.

¶ 41. I would reverse and remand this case and instruct the trial court to hold a *Machner*[3] hearing to

---

[3] *State v. Machner*, 101 Wis. 2d 79, 303 N.W.2d 633 (1981).

decide whether Mentek asked his attorney to file an appeal and whether the attorney agreed to do so. If the trial court found Mentek's version of the facts is correct, the remedy would be to allow Mentek to file his administrative appeal anew. If I am correct in my interpretation of the administrative code, then the appeal would be with the assistance of an attorney. If I am incorrect about my construction of the administrative code, but am correct that Mentek's attorney was still ineffective, then Mentek would be allowed to process his administrative appeal pro se.